No. 98-043

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 192

IN RE THE CHILD SUPPORT OF

PAMELA and PENNY MASON,

SHEILA SMITH, formerly known as Sheila Mason,

Petitioner and Respondent,

v.

GEORGE STEPHEN MASON,

Respondent and Appellant.

APPEAL FROM: District Court of the Twenty-First Judicial District,

In and for the County of Ravalli,

The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

J. Stuart Bradshaw, Attorney at Law, Stevensville, Montana

For Respondent:

Patricia A. Sanders; Sanders & Heller, Hamilton, Montana

Submitted on Briefs: April 16, 1998

Decided: August 6, 1998

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

**¶ George Stephen Mason (George) appeals from the decision of the Twenty-First Judicial District Court, Ravalli County, giving full faith and credit to a Utah default judgment awarding Sheila Smith (Sheila) past due child support. Sheila filed the Utah judgment in Montana seeking its enforcement. George, however, sought relief from the Utah judgment maintaining that the Utah court lacked personal jurisdiction over him and thus could not enter a valid default judgment. The District Court determined that the Utah judgment is entitled to full faith and credit in Montana. We affirm.**

Factual and Procedural Background

**¶ This child support case is a bit unique in that the parties were divorced in 1959 and the children for whom Sheila seeks child support are now approximately 40 years old. To complicate matters further, the parties married in Utah, dissolved their**

marriage in Utah and raised the children in Utah. George moved to Montana in 1985 or 1986, nearly 10 years after the children reached majority. The crux of this case is that since the dissolution of the parties' marriage in 1959, George has actively avoided his child support obligations and Sheila has diligently protected her rights.

¶ The parties ended their marriage when the children were approximately two years old. George was ordered to pay $50 a month per child and $50 a month in maintenance. During the sixteen years that Sheila raised the children, she sought enforcement of George's support obligations and with the exception of a few payments, George failed to meet those obligations. In 1970, a Utah court entered judgment in the amount of $11,705 for delinquencies accrued under the parties' divorce decree.

¶ In 1977, when both children reached majority, Sheila sought and obtained a final judgment in Utah as to past due child support obligations. George failed to appear in the 1977 matter and default judgment was entered against him. Thereafter, George sought to set aside the default judgment arguing that, in light of Utah Code Ann. § 78-12-22 (1953), which provides an eight-year statute of limitations on enforcement of judgments, the default judgment was not renewable. In other words, George argued that the 1970 judgment that Sheila obtained would expire in 1978 and could not be renewed by refiling the judgment. The lower court denied his motion to set aside the default judgment and let the 1970 judgment stand. George appealed the matter to the Supreme Court of Utah.

¶ The Utah Supreme Court, at Mason v. Mason (Utah 1979), 597 P.2d 1322, determined that the lower court did not abuse its discretion in denying the motion to set aside because George failed to raise a valid defense. In addition, the court clarified that the 1970 judgment was renewable. The Utah Supreme Court explained that "the owner of the cause of action has already resorted to the court to preserve it; and unless [she] can bring another action on the judgment within the eight-year period, [she] has no way of preventing the loss of [her] justly adjudicated claim." Mason, 597 P.2d at 1324. The court determined that Sheila was awarded a valid final judgment as to the past due amounts and ruled that the judgment was renewable, thus allowing Sheila an opportunity to preserve her judgment.

¶ Thereafter, Sheila renewed her judgment in compliance with Utah law every eight years and the balance continued to accrue interest. Most recently, Sheila renewed her

Utah judgment in 1993. At no time prior to the 1993 action to renew the judgment did George contend that the Utah courts lacked jurisdiction over him regarding his child support obligations. However, in response to Sheila's 1993 renewal, George filed a motion to dismiss for lack of personal jurisdiction. George maintains that, because he no longer lives in Utah and no longer has "minimum contacts" with that state, the Utah court's exercise of jurisdiction violates due process as not comporting with the fair play and substantial justice standard set forth by the United States Supreme Court in International Shoe Co. v. Washington (1945), 326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95. As a result, George asserts that the Utah court lacked jurisdiction to enforce the judgment against him.

¶ Following extensive briefing by the parties, the Utah court denied George's motion to dismiss for lack of personal jurisdiction. Thereafter, George failed to file any further appearances in the Utah court and a default judgment renewing the original judgment was entered against him for past due child support plus interest in the total amount of $48,740.

¶ Upon successfully renewing her judgment in 1993, Sheila employed the services of a Montana child support enforcement agency which filed the Utah judgment in Montana. The agency, acting on Sheila's behalf, sought enforcement of the Utah judgment against George in Montana and an order suspending George's driver's license. George sought relief from the default judgment asserting that the Utah judgment should not be given full faith and credit because the Utah court lacked personal jurisdiction over him when it entered the judgment. George requested that the Ravalli County District Court revisit the issue of whether the Utah court had personal jurisdiction over him. In addition, George asserted that suspension of his driver's license would result in a hardship for him because his employment involved an extensive amount of driving.

¶ Following a hearing, the District Court determined that because the Utah decision was not "modified or vacated by an appeal" it is entitled to full faith and credit. Additionally, the District Court determined that suspension of George's driver's license would result in a hardship for him and thus stayed the suspension pending payment by George of one-third of the total amount due within 30 days and regular payments thereafter in accordance with a fixed payment plan.

¶ George appeals to this Court raising the issues of whether the District Court

properly afforded the Utah judgment full faith and credit and whether the court abused its discretion in conditioning the stay of suspension of the driver's license upon an immediate payment of one-third of the judgment.

Discussion

I

¶ 1) Did the District Court err in affording the Utah judgment full faith and credit?

¶ The United States Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const., art. IV, § 1. The United States Supreme Court recently clarified that "[a] final judgment in one State, *if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment*, qualifies for recognition throughout the land." Baker v. General Motors Corp. (1998), ___ U.S. ___, 118 S.Ct. 657, 664, 139 L.Ed.2d 580 (emphasis added). Thus, a final judgment rendered by a court of one state is entitled to full faith and credit in another state so long as the court rendering the decision had jurisdiction over the subject matter and the parties. George asserts that the Utah court lacked personal jurisdiction over him because he no longer has minimum contacts with Utah and thus the Utah decision is not entitled to full faith and credit in Montana. We disagree.

¶ The standard of review of a district court's conclusions of law is whether the court correctly interpreted the law. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-04. The District Court concluded that the Utah court had personal jurisdiction over George and thus the Utah judgment is entitled to full faith and credit. We review that decision to determine whether the District Court correctly interpreted the constitutional requirement of full faith and credit.

¶ The District Court, in affording the Utah judgment full faith and credit, stated that "the issue of the Utah court's personal jurisdiction over [George] was presented to that Court and the [Utah] Court made a judgment on the merits - that the Court did have personal jurisdiction over [George]. That judgment . . . is entitled to full faith and credit in this Court and should not be re-litigated." Thus, the District Court determined that George's prior presentation of the jurisdiction issue in the Utah courts has res judicata effect in Montana and bars any subsequent litigation on that

issue here. We conclude that the District Court correctly interpreted the constitutional requirement of full faith and credit.

¶ In Underwriters National Assurance Co. v. North Carolina Life and Accident and Health Ins. Guar. Ass'n (1982), 455 U.S. 691, 102 S.Ct. 1357, 71 L.Ed.2d 558, the United States Supreme Court granted certiorari to decide whether a North Carolina court violated the Full Faith and Credit Clause by refusing to treat a prior Indiana court judgment as res judicata on the issue of jurisdiction. Underwriters, 455 U.S. at 694. The North Carolina court, despite a clear ruling by the Indiana court that it was properly exercising jurisdiction, relitigated the jurisdiction issue and determined that Indiana did not have jurisdiction over the North Carolina matter. The Supreme Court held that " 'a judgment is entitled to full faith and credit--even as to questions of jurisdiction--when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.' " Underwriters, 455 U.S. at 706 (quoting Durfee v. Duke (1963), 375 U.S. 106, 111, 84 S.Ct. 242, 245, 11 L.Ed.2d 186). The Supreme Court determined that the North Carolina court failed to recognize its limited scope of review when determining whether a foreign court had jurisdiction to render a challenged judgment. The North Carolina court should have determined whether the Indiana court fully and fairly considered the question of jurisdiction. If the matter was fully considered and finally determined, that judgment was entitled to full faith and credit in North Carolina. Underwriters, 455 U.S. at 706-07.

¶ Thus, when issues of jurisdiction have been determined by one court, the doctrine of res judicata precludes a second court from considering jurisdiction so long as the first court fully and fairly considered the issue. Moreover, that judgment as to jurisdiction is entitled to full faith and credit in the second court. Such an interpretation comports with the full faith and credit policy that courts of one state must give such force and effect to a foreign judgment as the judgment would have received in its own state. This Court, like the North Carolina court, has a limited scope of review because George presented his personal jurisdiction issue to the Utah court. The Utah court determined that it had personal jurisdiction over George. Thus, this Court must simply determine whether the Utah court fully and fairly considered the issue.

¶ George moved to dismiss the 1993 Utah renewal action asserting that he no longer had minimum contacts with the State of Utah and thus the Utah court did not have

personal jurisdiction over him. The record indicates that the Utah court received extensive briefing from the parties regarding the jurisdiction argument. The Utah court had evidence that George and Sheila were married in Utah, resided in Utah throughout their marital relationship, had two children in Utah and were subsequently divorced in Utah. Additionally, George was a Utah resident when the Utah court ordered him to pay child support and he was a resident in 1977, when the Utah court, upon the children reaching majority, issued a final judgement as to the total past due child support. The Utah court determined that, notwithstanding George's subsequent departure from Utah in 1985 or 1986, it had sufficient evidence of George's relationship with the state of Utah.

¶ With respect to George's "minimum contacts," we recognize that in adopting the minimum contact test in <u>International Shoe</u>, the Court sought to ensure that the exercise of jurisdiction in a particular case would not offend "traditional notions of fair play and substantial justice." <u>International Shoe</u>, 326 U.S. at 316. More specifically, the "fair play and substantial justice" standard imposed by the minimum contacts test is satisfied when a defendant should reasonably have anticipated being haled before the court in question. <u>See</u> Kulko v. Superior Court of California (1978), 436 U.S. 84, 97-98, 98 S.Ct. 1690, 1700, 56 L.Ed.2d 132 (quoting Shaffer v. Heitner (1977), 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683). In this case, we determine that George should have reasonably anticipated being haled before the Utah court to defend against the child support action. In particular, George stated during the hearing on his motion to dismiss that he was aware of at least five or six separate occasions on which Sheila renewed her judgment in Utah and that he had notice of those proceedings. While George stated that he did not defend in some of those actions, he was aware of their existence and aware that he could be haled into court in Utah as a result of his outstanding obligations. We reject George's assertion that the Utah court's exercise of jurisdiction did not comport with the due process requirements of fair play and substantial justice.

¶ Moreover, the record reveals that the arguments made by the parties in Utah, namely George's argument that he no longer has minimum contacts with that state, are identical to the arguments they make to this Court. George had his day in court to litigate the issue of whether the Utah court had personal jurisdiction over him. This Court, in accordance with the constitutional requirements of full faith and credit and the doctrine of res judicata, is barred from relitigating the issue of jurisdiction.

No

¶ We determine that the Utah court fully and fairly considered the jurisdiction issue. As a result, this Court must give full faith and credit to the Utah court's determination that it had personal jurisdiction over George as to Sheila's 1993 action to renew her judgment for past due child support obligations. We further hold that the Utah default judgment is entitled to full faith and credit in this state.

II

¶ 2) Did the District Court abuse its discretion in conditioning the terms of the stay of suspension of driver's license upon an immediate payment of one-third of the judgment?

¶ Section 40-5-702, MCA, permits a support enforcement entity (including a district court), upon the petition of an obligee, to issue a notice of intent to suspend a license of an obligor. The enforcement agency in this case issued such a notice informing George of its intent to suspend his driver's license as a result of the past due child support judgment. In response, George sought relief from the suspension pursuant to § 40-5-710, MCA, which allows an obligor to seek a stay of the suspension. Section 40-5-710, MCA, provides that, upon a showing of significant hardship by the obligor, the enforcement entity may stay suspension of a license.

¶ The District Court held a hearing on the enforcement agency's petition for an order to suspend George's driver's license. At the hearing, George presented evidence that his job as a self-employed hardware supplier requires an extensive amount of driving and thus argued that a suspension of his driver's license would create a significant hardship for him. The District Court concluded that George had shown that a significant hardship would result

if his license was suspended. As a result, the District Court issued a stay subject to the following conditions: 1) within 30 days of the date of its order, George provide proof of payment of one-third of the total obligation; 2) that George enter a fixed payment plan for paying the remainder of the obligation; and 3) pursuant to § 40-5-710(4), MCA, the stay would terminate upon George's failure to abide by the above terms. George argues that the stay, as ordered by the District Court, is "essentially no stay at all."

¶ The granting of the stay and its terms are a matter of discretion for the district court. This Court will not overturn a discretionary ruling by a district court absent an abuse of discretion. May v. First Nat'l Pawn Brokers, Ltd. (1995), 270 Mont. 132, 134, 890 P.2d 386, 388. Section 40-5-710(4), MCA, provides that "[a] stay terminates upon . . . failure by the obligor to abide by the terms and conditions of a payment plan . . . ." The District Court, in setting the terms of the stay, noted that "continued judgments against [George] in Utah have gone ignored for far too long." Therefore, the court issued the stay, but conditioned the stay upon a substantial commitment from George to pay under the terms of the payment plan. We conclude that the District Court did not abuse its discretion. Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

Justice Terry N. Trieweiler specially concurring.

¶ **I concur with the result of the majority opinion, although I do not agree with all that is said therein.**

¶ **I concur that based on the U.S. Supreme Court's decision in *Underwriters National Assurance Co. v. North Carolina Life and Accident and Health Ins. Guarantee Association* (1982), 455 U.S. 691, 102 S. Ct. 1357, 71 L. Ed. 2d 558, this Court is bound by the Utah Court's decision that it had personal jurisdiction over George Stephen Mason when the enforcement action was commenced in 1993.**

¶ **I do not necessarily agree with the decision of the Utah Court, nor do I agree with the inference in the majority opinion that the location were George and Sheila were married, where they resided during their marriage, where they gave birth to children, or where they were divorced (all of which occurred prior to 1985), had anything to do with whether George had sufficient contact with the state of Utah in 1993 to afford that state personal jurisdiction when the enforcement action was commenced.**

¶ **Furthermore, I do not agree that the U.S. Supreme Court's decisions in either *Shaffer v. Heitner* (1977), 433 U.S. 186, 97 S. Ct. 2569, 53 L. Ed. 2d 683, or *Kulko v. Superior Court of California* (1978), 436 U.S. 84, 98 S. Ct. 1690, 56 L. Ed. 2d 132, in any way support this Court's conclusion that George had "minimum contact" with the state of Utah at the time that the 1993 action was commenced. The issue in *Shaffer* was whether the state of Maryland had personal jurisdiction over directors and officers of a corporation, even though they had never set foot in the state, simply because of their relationship to a corporation chartered in the state. The Supreme Court held that there was insufficient contact, and in the process, cited the following relevant language from one of its earlier cases:**

"[The State] does not acquire . . . jurisdiction by being the 'center of gravity' of the controversy, or the most convenient location for litigation. The issue is personal jurisdiction, not choice of law. It is resolved in this case by considering the acts of the [appellants]." *Hanson v. Denckla*, 357 U.S. 235, 254 (1958).

No

*Shaffer*, 433 U.S. at 215, 97 S. Ct. at 2585, 53 L. Ed. 2d at 705. Nothing from the *Shaffer* decision remotely supports the majority's decision in this case.

**¶ The *Kulko* decision is even less supportive of the majority's conclusions. The issue in *Kulko* was whether the State of California had personal jurisdiction to increase a nonresident father's child support obligation. The mother in that case, who had petitioned the California court for relief, was a resident of California, as were the parties' children. However, the father's only connections to the state were two previous visits to the state, the fact that he and his former wife had been married in the state, the fact that at the time of the parties' separation he had agreed to allow his children to spend summers with their mother in California, and the fact that he later consented to allow his daughter to live with her mother in California during the school year. The U.S. Supreme Court held that under these circumstances the California courts did not have personal jurisdiction over the children's father. It stated: "[W]e believe that the California Supreme Court's application of the minimum-contacts test in this case represents an unwarranted extension of *International Shoe* and would, if sustained, sanction a result that is neither fair, just, nor reasonable." *Kulko*, 436 U.S. at 92, 98 S. Ct. at 1697, 56 L. Ed. 2d at 141.**

**¶ The only language in the *Kulko* decision relevant to the principle issue in this case is the following:**

It cannot be disputed that California has substantial interests in protecting resident children and in facilitating child-support actions on behalf of those children. But these interests simply do not make California a "fair forum," *Shaffer v. Heitner, supra,* 433 U.S. at 215, 97 S.Ct. at 2586, in which to require appellant, who derives no personal or commercial benefit from his child's presence in California and who lacks any other relevant contact with the State, either to defend a child support suit or to suffer liability by default.

*Kulko*, 436 U.S. at 100-01, 98 S. Ct. at 1701, 56 L. Ed. 2d at 146-47.

¶ **There are no facts, no law, and no language in the *Kulko* decision which support the majority's decision in this case, nor the Utah court's decision based on the record before us.**

¶ **The 1993 enforcement action upon which George's current debt is based was a separate action for which a separate determination of minimum contacts had to be made. Whether or not George was present in Utah in some capacity seven years earlier is irrelevant. However, the decision of the Utah court was not appealed and is, therefore, final and binding.**

¶ **Finally, I do not necessarily agree with the Supreme Court's reasoning in *Underwriters*. It makes little sense to me that a court which may be without jurisdiction can, in fact, finally decide the issue of jurisdiction for the purpose of binding other courts by its judgment. However, I do agree that the decision controls the outcome of this case since it interpreted the uniquely federal guarantee of full faith and credit.**

¶ **For these reasons, I specially concur with the majority opinion.**

/S/ TERRY N. TRIEWEILER