A99A0934. DEPARTMENT OF HUMAN RESOURCES v. DEASON.
(520 SE2d 712)

ELDRIDGE, Judge.

On August 5, 1966, Sheryn C. Deason and James E. Deason, residents of Florida, were married in Miami, Florida. On June 20, 1973, the parties were divorced in the Circuit Court of Broward County, Florida. Immediately prior to the divorce action being filed, each party had been bona fide residents of Broward County, Florida. There were two minor children born of this marriage: Jennie Deason, born April 7, 1972, and James E. Deason, Jr., born December 19, 1966.

On May 7, 1973, James E. Deason was personally served with valid process but did not answer the divorce, custody, and child support action. On May 29, 1973, the parties entered into a written custody, child support, and property settlement agreement that was incorporated into the final judgment. The agreement provided that James Deason would pay to Sheryn Deason $70 per week in child support, which would decrease by $35 per week when each child attained the age of 21, became self-supporting, or married.

As of April 30, 1994, James Deason was in arrearage in child support and owed Sheryn Deason back child support in the amount of $58,220. On April 30, 1994, the State of Florida, Department of Health & Rehabilitative Services in Broward County, had Sheryn Deason execute an affidavit of child support which stated that, since January 1975, James E. Deason, Sr., had defaulted on payment of any child support.

On November 20, 1997, the District Attorney for Gwinnett County filed a petition for enforcement of a foreign order by contempt under 28 USC § 1738B against James E. Deason, Sr., for the State of Georgia, Department of Human Resources, ex rel. Sheryn C. Deason. On August 4, 1997, James E. Deason accepted, waived, and acknowledged service in the Petition for Enforcement of Foreign Order by Contempt under 28 USC § 1738B and submitted to the jurisdiction and venue of the Superior Court of Gwinnett County. At the time the petition was filed, he was believed to be living at 3255 Trotter's Walk Circle, Snellville, Gwinnett County, Georgia; however, in his answer he denied this. Rule nisi issued on November 20, 1997, for a hearing on January 20, 1998, but was not received. On January 28, 1998, a summons and rule nisi were reissued for hearing on March 31, 1998. On April 23, 1998, the hearing was continued by court order until May 5, 1998. On May 5, 1998, James E. Deason filed an answer alleging that the judgment was dormant since 1980; that Sheryn C. Deason was guilty of laches in delay in collecting it; and that the allegations of the complaint were denied. On May 7, 1998, by written order the hearing was continued until June 16, 1998.

The only evidence in the case consists of the verified petition and answer. There was no evidentiary hearing. The record is silent as to the following: whether there has been an effort to collect this arrearage earlier, and, if not, why not; whether there were any reasonable justifications for the delay; whether James E. Deason has hidden for the last 25 years or if his whereabouts were known; when he last lived in Florida; and whether he is a resident of Georgia, and, if so, for how long and where.

On October 9, 1998, after hearing oral argument on the defenses, the trial court made the following findings of fact: the facts in the petition are correct; the petition claims an arrearage of $58,220,

although the court made no finding that this was true; James E. Deason, Jr., became 21 on December 19, 1987; Jennie Deason became 21 on April 7, 1993; the petition for enforcement of foreign order by contempt to collect $58,220 in due and owing child support was filed five years, seven months, and thirteen days after the final installment was due; and no evidentiary hearing was held, but was based upon the undisputed facts urged by the parties.

In the conclusions of law, the trial court relied exclusively upon Georgia substantive and procedural law to conclude that

> [a]limony judgments, like all other judgments, are subject to and controlled by our Dormancy and Revival Statutes and any applicable statute of limitation. A lump sum alimony judgment is dormant after the expiration of seven years, and is not subject to revival after the expiration of ten years. This applies to said payments due prior to July 1, 1997. [Cit.]

"There is no question that child support judgments are subject to statutes regarding dormancy even though the enforcement of these judgments is by means of contempt action." *Parker v. Eason*, 265 Ga. 236 (454 SE2d 460) (1995)." On October 9, 1998, the trial court dismissed the complaint as barred by the statute of limitation. On December 9, 1998, appellate review under OCGA § 5-6-35 was granted. On December 11, 1998, notice of appeal was filed.

1. The first enumeration of error is that the trial court improperly applied Georgia law, rather than Florida law, to the petition for enforcement of a foreign child support order. We agree.

The petition in this case was brought pursuant to the Full Faith & Credit for Child Support Orders Act ("FFCCSOA"), 28 USCS § 1738B, to enforce a Florida child support judgment.

(a) Despite the urging of the Attorney General, the Uniform Interstate Family Support Act ("UIFSA"), OCGA § 19-11-160 et seq., cannot be applied in this case; it was passed by the General Assembly in 1997 to replace, in the future, the Uniform Reciprocal Enforcement of Support Act ("URESA"). OCGA § 19-11-40 et seq., Ga. L. 1997, pp. 1613, 1655, § 32. The language of the Act did not clearly and plainly express the intent of the General Assembly that the provisions of the Act apply retroactively. Ga. L. 1997, pp. 1613, 1679, § 36.

> The effective date of OCGA § 9-12-60 (d) [(Ga. L. 1997, pp. 1613, 1616, § 2)] is July 1, 1997, and there is no expression of any legislative intent that it apply to judgments for child support and spousal support entered before that date. [Cits.]

Giving that amendment a retroactive interpretation would have the far-reaching effect of authorizing initiation of a suit after July of 1997 to recover arrearages on any and all child or spousal support judgments that were entered in this state at *any* time prior to July of 1987. Our review of the 1997 enactment as a whole does not lead us to the conclusion that the General Assembly's implicit intent was that OCGA § 9-12-60 (d) [(Ga. L. 1997, p. 1613 et seq.)] have such a broad and significant impact. [Cits.]

(Emphasis in original.) *Brown v. Brown*, 269 Ga. 724, 726-727 (506 SE2d 108) (1998). In fact, OCGA § 19-11-40.5 expressly provided that UIFSA and the other provisions of the Act apply to proceedings initiated on or after January 1, 1998, while URESA continued to apply to proceedings pending prior to January 1, 1998. Ga. L. 1997, pp. 1613, 1655, § 32.

"A repealing Act will not be given retroactive operation so as to divest previously acquired rights. A statute is never to be given a retroactive operation unless such construction is absolutely demanded." (Citations and punctuation omitted.) *J. Scott Rentals v. Bryant*, 239 Ga. 585, 587 (238 SE2d 385) (1977).

Generally statutes prescribe for the future and that is the construction to be given unless there is a clear contrary intention shown. On the other hand, where a statute governs only procedure of the courts, including the rules of evidence, it is to be given retroactive effect absent an expressed contrary intention. . . . Substantive law is that law which creates rights, duties, and obligations. Procedural law is that law which prescribes the methods of enforcement of rights, duties, and obligations.

(Citations and punctuation omitted.) *Polito v. Holland*, 258 Ga. 54, 55 (2), (3) (365 SE2d 273) (1988); see also *Pritchard v. Savannah Street &c. R. Co.*, 87 Ga. 294 (13 SE 493) (1891). "The general rule is that procedural laws should be applied retroactively unless the legislature has expressed a contrary intent," which it did regarding Ga. L. 1997, p. 1613. *Mug A Bug Pest Control v. Vester*, 270 Ga. 407 (509 SE2d 925) (1999). Ga. L. 1997, p. 1613, creates both substantive and procedural statutory changes and affects vested rights, so that the legislature intended for it to be applied prospectively. Id.

While Ga. L. 1997, p. 1613, cannot be applied retroactively because of the language in its effective date, the Act can assist in determining the legislative intent regarding URESA and the public policy in Georgia regarding collection of foreign child support judg-

ments. The General Assembly expressed through the Act the public policy of Georgia regarding several existing evils that it desired to correct through the Act: (1) judgments for child support, domestic or foreign, no longer are subject to a statute of limitation, Ga. L. 1997, pp. 1613, 1616, § 1 (OCGA § 9-3-20); (2) judgments or orders for child support no longer become dormant, Ga. L. 1997, pp. 1613, 1616, § 2 (OCGA § 9-12-60 (d)); (3) each child support payment or installment is a judgment which, when due, is entitled to full faith and credit, Ga. L. 1997, pp. 1613, 1618, § 6 (OCGA § 19-6-17 (e) (1), (2)); (4) foreign support orders are unmodifiable, except by FFCCSOA, Ga. L. 1997, pp. 1613, 1619-1620, § 7 (OCGA § 19-6-26); (5) the choice of law is determined, Ga. L. 1997, pp. 1613, 1674, § 33 (OCGA §§ 19-11-163; 19-11-166); and (6) many other statutory changes. "The recent amendment . . . affirms the legislative intent that a plaintiff have a broad [and liberal] right" regarding collection of a foreign child support judgment that was in arrearage; thus, it is appropriate in statutory construction to look to the recent legislative amendment that does not have retroactive application to determine the intent of the legislature regarding the statute prior to amendment. *Porquez v. Washington*, 268 Ga. 649, 652 (1) (492 SE2d 665) (1997).

(b) As originally enacted by Ga. L. 1958, pp. 34-35, 40, §§ 2 and 8 (OCGA §§ 19-1-42 (6); 19-11-51; 19-11-63), URESA did not specifically authorize an action to collect arrearages; Ga. L. 1979, p. 941, §§ 1, 2 (OCGA §§ 19-11-43; 19-11-51; 19-11-63); *Brookins v. Brookins*, 257 Ga. 205, n. 1 (357 SE2d 77) (1987). Notwithstanding the absence of a provision specifically authorizing recovery for arrearages prior to 1979, such retroactive application was allowed; otherwise, the purpose of URESA would be defeated. See id. at 206-207; see also *State of Ga. v. McKenna*, 253 Ga. 6, 9 (315 SE2d 885) (1984); *Ray v. Ray*, 247 Ga. 467, 469 (277 SE2d 495) (1981). As in this case, an URESA action may be used to collect arrearages after the minor reaches majority; "[t]he fact that the child reached majority did not divest the trial court of its power to assure compliance with its previously entered order." *Johnson v. State of Ga.*, 167 Ga. App. 508, 509 (306 SE2d 756) (1983). "URESA contains an additional procedure for registering and enforcing foreign judgments" other than by domesticating the foreign child support judgment. *State of Ga. v. McKenna*, supra at 9; OCGA § 19-11-79 et seq. Thus, this action was not a domestication of a foreign child support judgment but, instead, was a registration of such judgment under URESA. OCGA § 19-11-79 et seq.

The choice of law in URESA cases is governed by the law of the state of rendition of the child support judgment. OCGA § 19-11-49; *Evans v. State of Ga.*, 178 Ga. App. 1, 3 (2) (341 SE2d 865) (1986); *Earley v. Earley*, 165 Ga. App. 483, 486 (300 SE2d 814) (1983); *Bisno*

*v. Biloon*, 161 Ga. App. 351, 352-353 (291 SE2d 66) (1982), overruled on other grounds, *State of Ga. v. McKenna*, supra at 10. "We would, however, reiterate that URESA provides for the *enforcement* of duties to support. The courts of this state have no authority to *modify* a final decree of a foreign state awarding permanent alimony for the support of minor children. [Cit.]" (Emphasis in original.) *Bisno v. Biloon*, supra at 355; accord *State of Ga. v. McKenna*, supra at 9. OCGA § 19-11-80 (a) provides that "defenses in an action to enforce a foreign money judgment" are the only defenses to an URESA action in the responding state, Georgia. See OCGA § 9-12-130 et seq.; *Dansby v. Dansby*, 222 Ga. 118, 120-121 (1) (149 SE2d 252) (1966); *Dept. of Human Resources v. Fenner*, 235 Ga. App. 233, 234 (2) (510 SE2d 534) (1998). The Florida child support judgment and the support agreement showed on their face that personal service, notice, personal jurisdiction, and subject matter jurisdiction were not defenses. *Dept. of Human Resources v. Fenner*, supra at 235; see also OCGA § 9-12-134.

Dormancy or running of the statute of limitation under Georgia law is not a defense to an URESA action on a foreign judgment, because Georgia treats a foreign child support judgment as not being subject to the Georgia statute of limitation. Thus, it follows that the Georgia dormancy statute would be inapplicable for the same reasons to a foreign child support action under URESA. See *Brookins v. Brookins*, 190 Ga. App. 852, 853 (380 SE2d 494) (1989). When URESA is not used to register a foreign child support judgment and the foreign child support judgment is domesticated, "for reasons of comity," "Georgia courts [will] recognize and give prospective enforcement to a foreign alimony or child support decree by establishing it as the decree of a Georgia court through domestication and treating it as though it were a local decree. [Cits.]" *Blue v. Blue*, 243 Ga. 22, 23 (252 SE2d 452) (1979); accord *Williamson v. Williamson*, 247 Ga. 260, 262 (275 SE2d 42) (1981). Any domesticated foreign judgment would be like a Georgia judgment, because it has been made a Georgia judgment by statute and court action, making it subject to any statute as to a dormancy provision. *Brown v. Brown*, supra at 726-727. However, any applicable statute of limitation provision would come under the laws of the *rendition* state as to a domesticated child support judgment or order. See generally *Williamson v. Williamson*, supra at 262; *Conway v. Conway*, 223 Ga. 349, 350 (1) (155 SE2d 17) (1967). Under Fla. Stat. Ann. § 95.11 (1) (1960), the statute of limitation on a general judgment in the circuit court, a court of general jurisdiction, is 20 years for enforcement. See *Massey v. Pineapple Orange Co.*, 100 S. 170 (Fla. 1924); *Winter v. Allstate Mtg. Corp. of Fla.*, 303 S2d 399 (Fla. App. 1974). Further, Fla. Stat. Ann. § 742.08 provides that "[u]pon default in payment of any moneys ordered by the court to be

paid [for child support], the court may enter a judgment for the amount of default, plus interest, administrative costs, filing fees and other expenses incurred by the clerk of the circuit court," which means that the statute of limitation would commence at different times for each installment. Florida, in enforcing URESA, does not apply its own statute of limitation for judgments to a foreign child support judgment. *Frazier v. Frazier*, 616 S2d 575, 579 (Fla. App. 1993); *Wood v. Hunter*, 504 S2d 553, 554-555 (Fla. App. 1987). "While we are not bound by the decisions of . . . other states, they are particularly persuasive because we are interpreting a reciprocal uniform law." *State of Ga. v. McKenna*, supra at 9.

Domestic, but not foreign undomesticated, "alimony judgments [as well as child support judgments], like all other judgments, are subject to and controlled by our dormancy and revival statutes and any applicable statute of limitation." *Bryant v. Bryant*, 232 Ga. 160, 163 (205 SE2d 223) (1974).

> [W]ith respect to installment-payment [child support] judgments, installments that became due within seven years preceding the issuance and recording of the execution are collectible and enforceable, and installments that are dormant, having become due seven to ten years prior to the filing of a revival action, are subject to being revived through the applicable statutory revival procedure.

Id. at 163; accord *Wannamaker v. Carr*, 257 Ga. 634 (362 SE2d 53) (1987); *Zerblis v. Zerblis*, 239 Ga. 715, 716-717 (238 SE2d 381) (1977). "There is no question that child support judgments are subject to statutes regarding dormancy even though the enforcement of these judgments is by means of a contempt action. *Wannamaker v. Carr*, [supra]." *Parker v. Eason*, supra at 237. *Brown v. Brown*, supra at 726-727 (2), dealt with a domestic judgment rendered under Georgia law and subject at that time to provisions for dormancy of judgments. OCGA § 9-12-60 (a). However, such provisions have no application to a foreign, undomesticated, child support judgment collected under URESA by registration. See OCGA § 19-11-79 et seq.; *Brookins v. Brookins*, supra, 190 Ga. App. at 853.

As to foreign judgments in general,

> [w]e know of no statutory law of this State dealing with suits on domestic judgments, and none has been cited by counsel for plaintiffs in error. Therefore, when the legislature dealt with foreign judgments in [OCGA § 9-3-20], it was dealing with the named class, "foreign judgments," which was completely unrelated to the subject matter of limita-

tions upon enforcement of domestic judgments within prescribed periods of time as provided in [OCGA § 9-12-60]. Therefore, the plea of the limitations of [OCGA § 9-3-20] to this suit on a Florida judgment which was instituted more than five years after the date of that judgment was valid, and the court did not err in sustaining the same and dismissing the suit based upon the Florida judgment.

*Watkins v. Conway*, 221 Ga. 374, 375 (3), (4) (144 SE2d 721) (1965).

The statute [OCGA § 9-3-20] bars suits on foreign judgments only if the plaintiff cannot revive his judgment in the State where it was originally obtained. For the relevant date in applying [OCGA § 9-3-20] is not the date of the original judgment, but rather it is the date of the latest revival of the judgment. *Fagan v. Bentley*, 32 Ga. 534 (1861); *Baty v. Holston*, 108 Ga. App. 359 (133 SE2d 107) (1963). In the case at bar, for example, all appellant need do is return to Florida and revive [the] judgment.

*Watkins v. Conway*, 385 U. S. 188, 189-190 (87 SC 357, 17 LE2d 286) (1966). Thus, Georgia recognizes dormancy provisions of the rendition state. However, since this is an URESA action on a registered foreign judgment, then it has no application.

URESA is a foreign judgment that does not come within such provisions, because

URESA was enacted to *"improve and extend* by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto." OCGA § 19-11-41. Accordingly, a[n] URESA action for child support arrearages cannot be viewed as a traditional "action on a foreign judgment." [Cit.] A[n] URESA action for child support arrearages seeks enforcement of a duty of support and it is a proceeding wherein the foreign judgment does not constitute the gist of the action, but is merely evidence from which the extent of the child support obligor's default in meeting his duty can be quantified. When consideration is given to the express legislative intent underlying enactment of URESA, it would be anomalous to hold that a[n] URESA action for child support arrearages is nevertheless subject to the same principles that would be applicable in a traditional "action on a foreign judgment." "The purpose of URESA is to improve the enforcement of the duty of support, not to impair that duty." *Ray v. Ray*, [supra at] 469. Rigid adherence to OCGA § 9-3-20 would not improve the enforcement

of the duty of support but, in our increasingly mobile society, would make this state a haven for any child support obligor who had successfully evaded his duty to support his children for more than five years. "A mechanical application of OCGA § 9-3-20 in this situation would frustrate the purposes of the URESA. URESA was designed to facilitate collection of support from absent parents in distant states without incurring excessive transportation and litigation expenses." *Brookins v. Brookins*, [supra, 257 Ga. at 206 (2)].

(Citations and punctuation omitted; emphasis in original.) *Brookins v. Brookins*, supra, 190 Ga. App. at 853. "Accordingly, we hold that OCGA § 9-3-20 does not provide [the obligor] with a statute of limitation defense to this URESA action for child support arrearages under the [Florida] judgment." Id. at 853.

The legislative intent to exclude URESA and UIFSA from the Georgia dormancy and statute of limitation provisions was expressed by OCGA § 9-12-60 (d). While such statute is not applicable directly to URESA because of retroactivity problems, OCGA § 9-12-60 (d) reflects the intent of the legislature in this situation. Unlike URESA, which has no statute of limitation, UIFSA expressly makes the statute of limitation a defense for the first time in Georgia. OCGA § 19-11-163; *Brookins v. Brookins*, supra, 190 Ga. App. at 853. Thus, the trial court erred in dismissing the complaint under URESA as barred by the Georgia statute of limitation. Id.

(c) The trial court erred in ignoring and deciding to dismiss the action without consideration of FFCCSOA, 28 USCS § 1738B. Congress has mandated that full faith and credit be given to a foreign child support order or judgment. 28 USCS § 1738B (a); see also the Supremacy Clause, United States Constitution, Art. VI. The Supremacy Clause caused FFCCSOA to preempt URESA. See *In re Marriage of Yuro*, 968 P2d 1053, 1056 (Ariz. App. 1998); *State v. Skladanuk*, 683 S2d 624, 625-626 (Fla. App. 1996); *In re Marriage of Comer*, 14 Cal.4th 504 (59 Cal. Rptr. 2d 155, 927 P2d 265) (1996); *In the Matter of Isabel M. v. Thomas M.*, 624 NYS2d 356, 358-359 (Fam. Ct. 1995).

In this case, proper subject matter, personal jurisdiction, proper notice, and opportunity to be heard in the rendering state were not issues and were fully satisfied when the foreign judgment was entered. See 28 USCS § 1738B (c); *Dept. of Human Resources v. Fenner*, supra at 233.

Further, in regard to choice of law, the Act provides:

(1) In general. In a proceeding to establish, modify, or enforce a child support order, the forum State's law shall

apply except as provided in paragraphs (2) and (3). (2) Law of state of issuance of order. In interpreting a child support order including the duration of current payments and other obligations of support, a court shall apply the law of the State of the court that issued the order. (3) Period of limitations. In an action to enforce arrears under a child support order, a court shall apply the statute of limitations of the forum State or the State of the court that issued the order, whichever statute provides the longer period of limitations.

28 USCS § 1738B (h) (1)-(3); *Dept. of Human Resources v. Fenner*, supra at 234 (1), n. 1. Florida has no statute of limitation for child support orders, because Florida treats actions to enforce child support arrearages as equitable in nature. *Fowhand v. Piper*, 611 S2d 1308 (Fla. App. 1992); *Bloom v. Bloom*, 414 S2d 1153 (Fla. App. 1982); *Melvin v. Melvin*, 391 S2d 691 (Fla. App. 1980); *Armour v. Allen*, 377 S2d 798 (Fla. App. 1979). In fact, Florida has no dormancy provision regarding child support arrearages, because such arrearages are treated as an equitable proceeding. *Dean v. Dean*, 665 S2d 244 (Fla. App. 1995). Thus, the trial court erred in at least not considering the Florida statute of limitation as to judgments, in general, which was longer than OCGA § 9-3-20, even if it did not consider the absence of statutes of limitations and dormancy regarding Florida child support arrearages under Florida law. See Fla. Stat. Ann. § 95.11 (1); *Fowhand v. Piper*, supra; *Dean v. Dean*, supra.

Since Florida treats a proceeding to enforce child support orders as an equitable and not a legal proceeding, then Florida recognizes the equitable defense of laches to child support arrearages. See *State v. Whaley*, 692 S2d 1016 (Fla. App. 1997); *Dean v. Dean*, supra at 244; *Frazier v. Frazier*, supra at 579; *Fowhand v. Piper*, supra at 1311; *Popper v. Popper*, 595 S2d 100, 103-104 (Fla. App. 1992). But, unless the obligor must show "extraordinary facts or strongly compelling circumstances, the action or inaction of a parent will not give rise to a defense of laches barring enforcement of child support arrearages." *Fowhand v. Piper*, supra at 1310; see also *Dean v. Dean*, supra at 244. The obligor must show "substantial prejudice" due to the delay for laches to attach. See *State v. Whaley*, supra at 1016; accord *Dean v. Dean*, supra at 294. Thus, the trial court must determine whether Georgia or Florida equitable defenses can apply to an URESA action on a Florida child support judgment enforced in Georgia.

(d) The effective date of 28 USCS § 1738B was upon passage, October 20, 1994. Therefore, it must be determined under federal law whether the Act should have retroactive application to arrearages occurring prior to the effective date. The provisions of the Act itself do not expressly provide for retroactivity; however, the language of

the Act looks to enforcement of child support orders or judgments that "have been issued" and "made" in the past and does not use present or prospective language only. The legislative history expressed the problem of interstate child support arrearages as comprising as much as 30 percent of the child support cases under Title IV-D of the Social Security Act and that this problem has been studied by the U. S. Commission on Interstate Child Support at Congress' direction since 1988. Such problem existed in the past and continues to the present with the same failures to pay, promising future continuation of the problem of arrearages into the future unless corrected. However, the legislative history does not expressly state the intent of Congress regarding retroactivity. The language and purpose of both the Act and the legislative history are that of remedial legislation, looking toward retroactive application to assist in the collection of past arrearages. 5 U. S. Code & Congressional & Admin. News, pp. 3259-3265 (1994). Thus, the problem will continue into the future, and the purpose of the Act would be frustrated unless it is applied retroactively, which would require that congressional intent be inferred through construction to imply retroactivity.

> The first question [in determining the congressional intent as to retroactivity] is not whether Congress intended the law to be remedial or substantive. The court should have first decided whether Congress had a more specific intention regarding whether the law should apply retroactively. Only if congressional intent on that point is unclear does the remedial/substantive distinction come into play. See *Kaiser Aluminum* [& *Chem. Corp. v. Bonjorno*, 494 U. S. 827 (110 SC 1570, 108 LE2d 842) (1990)] ("where the congressional intent is clear, it governs"); *Mozee* [*v. American Commercial Marine Svc. Co.*, 963 F2d 929, 934-936 (7th Cir. 1992)] (when congressional intent was unclear, court applied rule that "statutory provisions impacting substantive rights and obligations will not be retroactively applied").

*Gay v. Sullivan*, 966 F2d 1124, 1127 (7th Cir. 1992); see also *Landgraf v. USI Film Productions*, 511 U. S. 244 (114 SC 1483, 128 LE2d 229) (1994).

> But where retroactivity is concerned, we believe that the Supreme Court has directed us to infer congressional intent from an accumulation of clues in the language and legislative history of statutes. See *Kaiser Aluminum,* [supra] (based on language of statute and future effective date, Congress intended statute to apply prospectively only); *Bennett*

[*v. New Jersey*, 470 U. S. 632 (105 SC 1555, 84 LE2d 572) (1985)] (based on future effective date and future tense of language in legislative history, Congress did not intend statute to apply retroactively).

*Gay v. Sullivan*, supra at 1129.

It is well settled that legislation that is interpretive, procedural, or remedial must be applied retroactively, while substantive amendments are given only prospective application. [Cits.] "Substantive acts are generally defined as those which create, confer, define, or destroy rights, liabilities, causes of action, or legal duties. Procedural acts describe methods for enforcing, processing, administering, or determining rights, liabilities, or status." [Cit.]

*Harrison v. Otis Elevator Co.*, 935 F2d 714, 719 (5th Cir. 1991).

Under *Bradley v. School Bd. of Richmond*, 416 U. S. 696 (94 SC 2006, 40 LE2d 476) (1974), there are three factors to determine on review if there is manifest injustice present: "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." Id. at 717; accord *Baynes v. AT&T Technologies*, 976 F2d 1370, 1373 (11th Cir. 1992); *Lussier v. Dugger*, 904 F2d 661 (11th Cir. 1990).

In this case, the statute imposes no new obligation, because the obligation of support arises at the birth of the minor child. *Ga. Dept. of Human Resources v. Mitchell*, 232 Ga. App. 215 (501 SE2d 508) (1998). The statute merely reinforces an existing obligation of child support. It deals with remedial matters of great congressional concern, i.e., the inability to enforce interstate child support orders, resulting in arrearages. Finally, the obligor is not deprived of a right that has matured or become unconditional, because under Florida law, as well as Georgia law, the preexisting obligation remains the same. See *Baynes v. AT&T Technologies*, supra at 1373-1374. Thus, under *Bradley*, the obligor suffers no manifest injustice when the Act is applied retroactively. See *Hughes Aircraft Co. v. United States*, 520 U. S. 939 (117 SC 1871, 138 LE2d 135) (1997); *Landgraf v. USI File Productions*, supra at 262. In fact, FFCCSOA is applied retroactively by other states. See *In re Marriage of Yuro*, supra at 1057; *Jennings v. DeBussy*, 707 A2d 44, 46-48 (Del. Fam. Ct. 1997); *Matter of Isabel M. v. Thomas M.*, supra at 357; *In re Day v. State*, 272 Mont. 170 (900 P2d 296, 300) (1995); *In re Marriage of Marino v. Lurie*, 33 Cal. App. 4th 658, 673-676 (39 Cal. Rptr. 2d 835) (1995).

The trial court erred in failing to give the Florida child support judgment full faith and credit under FFCCSOA. This is true despite the Act requiring retroactive application as a procedural and reme-

dial act. 28 USCS § 1738B; *Gentzel v. Williams*, 965 P2d 855, 860-861 (Kan. App. 1998); *State of Washington v. St. John*, 964 P2d 1242, 1244 (Wyo. 1998); *In re Smith v. Mason*, 290 Mont. 253 (964 P2d 743, 745) (1998); *Welsher v. Rager*, 491 SE2d 661, 665 (N. C. App. 1997); *Kelly v. Otte*, 474 SE2d 131, 133-135 (N. C. App. 1996); *State v. Fleet*, 679 S2d 326, 327-328 (Fla. App. 1996).

2. The second enumeration of error is that the trial court erred because, even under Georgia law, appellee is responsible for the last seven years of arrearage, and the three previous years are subject to revival. We agree, and although Division 1 requires reversal, this issue may arise on remand.

Division 1 held that OCGA §§ 9-3-20 and 9-12-60 (a) (1) do not apply to an URESA action to enforce arrearages on a foreign child support order, although such statutes apply to domestic child support orders. See *Brown v. Brown*, supra at 726-727 (2); *Brookins v. Brookins*, supra at 853. Thus, the Florida statute of limitation has run only as to a portion of the arrearage. See *Watkins v. Conway*, supra at 374; *Wright v. Trust Co. Bank*, 219 Ga. App. 551 (466 SE2d 74) (1995). "Thus, OCGA § 9-3-20 is not applicable to filings under the uniform law[, OCGA § 9-12-130 et seq., as well as URESA]." *Wright v. Trust Co. Bank*, supra at 552. Upon remand, the trial court must determine the mixed question of law and fact what amount of the arrearage is enforceable under the Florida statute of limitation, if it applies to a Florida child support judgment.

The doctrine of laches does not apply to an action under URESA in Georgia; however, the doctrine of laches may be applicable under Florida law. See *Ga. Dept. of Human Resources v. Mitchell*, supra. The trial court must determine under the applicable choice of law whether Georgia or Florida equitable principles apply in this case as to foreign child support arrearages.

Assuming that the Florida child support judgment was either a domestic child support judgment or a foreign child support judgment that had been domesticated so that Georgia law controlled, those installments "that came due within a period of ten years preceding the filing of the action" were subject to a claim for revival. *Bryant v. Bryant*, supra at 162; accord *Wannamaker v. Carr*, supra at 635-636 (2); *Zerblis v. Zerblis*, supra at 716-717. Bringing the URESA action to collect the arrearage was an attempt to collect on the foreign judgment, as well as a contempt action. Thus, it should be treated as a revival action, as well as an action to enforce a dormant judgment for child support under Georgia law. *Parker v. Eason*, supra at 237; *Wannamaker v. Carr*, supra at 634 (2); *Kight v. Behringer*, 192 Ga. App. 62 (383 SE2d 624) (1989).

*Judgment reversed. Pope, P. J., concurs. Smith, J., concurs in judgment only.*

DECIDED JULY 7, 1999.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Katherine S. Davis, Assistant Attorney General, for appellant.*
*Lewis M. Groover, Jr., for appellee.*