DUNN, Appellee,

v.

DUNN, Appellant.

[Cite as *Dunn v. Dunn* (2000), 137 Ohio App.3d 117.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA99–09–103.

Decided March 27, 2000.

*Goldman, Rubin & Shapiro* and *Joel Shapiro*, for appellee.

*Becker, Reed, Tilton & Hastings* and *Robert R. Hastings, Jr.*, for appellant.

---

POWELL, Presiding Judge.

Defendant-appellant, Robert Dunn, appeals a decision of the Warren County Court of Common Pleas, Domestic Relations Division, finding that he owed plaintiff-appellee, Jean Dunn, a child support arrearage in Ohio stemming from the initial child support order issued in the parties' divorce. For the reasons that follow, we reverse the judgment of the trial court.

Appellant and appellee were married in New York in 1980 and divorced in Warren County, Ohio in 1988. Two children were born issue of the marriage and appellant adopted appellee's daughter from a previous relationship. The divorce decree ("Ohio order") ordered appellant to pay child support of $111.31 per child per week. At the time the decree was entered, appellee had already moved to Florida with the children. One month later appellant moved to California. Thereafter neither party was domiciled in Ohio.

In November 1989, appellee applied for public assistance in Brevard County, Florida. Florida Human Services mandated that she file a Uniform Reciprocal Enforcement of Support Act ("URESA") petition as a condition of obtaining aid. On September 18, 1990, the URESA petition was forwarded to Placer County, California, where appellant lived. Appellee's URESA petition requested that the Placer County court order spousal support beyond the scheduled termination date, award specified arrearages, and increase appellant's child support obligation.

Appellee personally appeared at the initial hearing in Placer County, California. However, this hearing was continued by the court. A subsequent hearing was held on appellee's petition on May 27, 1992. Appellee was not present for this hearing but was represented by a Placer County district attorney in accordance with California URESA procedures. Appellant proceeded *pro se*.

The Placer County court determined appellant's child support obligation pursuant to California support guidelines based upon the financial information provided by appellee in the URESA petition and evidence and testimony presented by appellant. On September 15, 1992, *nunc pro tunc* January 1, 1991, the Placer County court ordered appellant to pay reduced support in the amount of $201 per month ("California order"). The Placer County court also ordered that appellant pay toward an arrearage of $3,011.41, which had accrued under the Ohio child support order from January 1989 through November 1989.

Appellant made regular child support payments under the California order. Appellant paid the arrearage due under the Ohio order, and made additional support payments in excess of the California order of approximately $12,000.

In December 1998, appellee filed a motion in the Warren County Court of Common Pleas requesting that the trial court determine the arrearage under the Ohio order and issue a lump sum judgment in her favor for that amount. A hearing on the motion was held on February 18, 1999 before a magistrate. The magistrate determined that the Ohio child support order remained in effect and that an arrearage had accrued under this order in spite of the fact that appellant had fully complied with the California order. The magistrate credited appellant with the amount paid under the California order and awarded appellee a lump sum judgment in the amount of $92,757.38.

Appellant timely filed objections to the magistrate's decision. The trial court overruled the objections in an entry filed August 11, 1999. The trial court found that the issuance of the California child support order had no impact on the validity of the Ohio child support order. Therefore, the court concluded that appellant was obligated under two separate child support orders simultaneously. The trial court specifically found that neither the federal Full Faith and Credit for Child Support Orders Act ("FFCCSOA") nor the Uniform Interstate Family Support Act ("UIFSA") operated to reconcile the competing orders. The trial court agreed that appellant's Ohio child support obligation should be credited with the amount he had paid pursuant to the California order, and affirmed the magistrate's calculation of appellant's arrearage.

Appellant appeals, raising four assignments of error:

Assignment of Error No. 1:

"The trial court lacked subject matter jurisdiction when it made the ruling at issue."

Assignment of Error No. 2:

"The court erred in determining that two valid court orders exist simultaneously in violation of the FFCCSOA statute."

Assignment of Error No. 3:

"The trial court erred by not giving the California order full faith and credit."

Assignment of Error No. 4:

"The trial court erred in not ruling that appellee was estopped from obtaining a lump sum judgment."

In his first three assignments of error, appellant argues that the trial court inappropriately failed to apply FFCCSOA or UIFSA provisions to reconcile the

competing child support orders. We find that appellant's first three assignments of error are interrelated and will therefore address them together.

Prior to January 1, 1998, most states had adopted either URESA or the Revised Uniform Reciprocal Enforcement of Support Act ("RURESA"). Both URESA and RURESA are essentially procedural devices to prosecute support obligations against nonresidents. These statutes do not create an independent support obligation, but rather are available to enforce any duty of support existing at law.

URESA and RURESA contemplate that a responding state will issue a support order based upon the law of the obligor's residence state, which may be different from the support order issued by the initiating state. R.C. 3115.06.[1] Moreover, support orders entered in a URESA/RURESA proceeding in a responding state do not necessarily supersede prior orders issued by the initiating state. *Id.* The result is that obligors could be subject to multiple and inconsistent orders for the same support obligation, as occurred in the present case.

The United States Congress passed the FFCCSOA in 1994 to address these inconsistencies. The FFCCSOA requires states to recognize ongoing child support obligations issued by other states. Section 1738B, Title 28, U.S.Code. In the "findings" section of the FFCCSOA, Congress indicated that it was acting, in part, to remedy "the existence of multiple orders for the same obligation * * * [and] unnecessary relitigation of support matters." *Id.*

Because the versions of URESA in effect since the 1950s permitted states to issue different support orders for the same obligations, a large number of competing orders existed at the time the FFCCSOA was enacted. In an effort to remedy this, the FFCCSOA, as amended in 1996, sets up a priority system to determine which support order is entitled to full faith and credit. Section 1738B(f)(5), Title 28, U.S.Code. The state that receives priority under the statutory rules becomes the state with continuing, exclusive jurisdiction over the support obligation. *Id.*

Effective January 1, 1998, Ohio repealed its RURESA statute and adopted the Uniform Interstate Family Support Act ("UIFSA"). UIFSA contains specific provisions for reconciling competing child support orders issued by different jurisdictions. The rules are intended "primarily to accommodate multiple orders for the same obligation which arose under URESA." Sowald & Morganstern, Ohio Domestic Relations Law (1997) 69, Section 23.34. Except for insignificant

---

1. R.C. 3115.06 was repealed effective January 1, 1998, and replaced by a nonanalogous UIFSA provision.

differences in terminology, the UIFSA priority rules are nearly identical to the existing requirements of the FFCCSOA. *Id.*; cf. R.C. 3115.09 and Section 1738B(f), Title 28, U.S.Code.

The principal issue in the present case is whether the priority rules of the FFCCSOA apply to determine the status of the competing California and Ohio support orders. Appellee contends, and the trial court agreed, that the statute cannot be applied retroactively to deny appellee's claim for an arrearage under the Ohio order. Appellant argues the contrary: that the statute is remedial in application and therefore applies to determine priority between the two orders.

Ohio courts addressing the application of UIFSA and the FFCCSOA have held that the legislation does not apply to actions pending prior to the effective dates of the statutes. See *State ex rel. Scioto Cty. Child Support Enforcement Agency v. Adams* (July 23, 1999), Scioto App. No. 98CA261, unreported, 1999 WL 597257; *Lewis v. Lewis* (Mar. 18, 1997), Franklin App. No. 96APF07–868, unreported, 1997 WL 128566. However, appellee brought the instant action well after the adoption of both statutes, a circumstance not addressed by these courts. One Ohio court has held that the "FFCCSOA may now apply to determine which of two competing orders has priority 'for purposes of continuing, exclusive jurisdiction and enforcement,' " although ultimately finding that the FFCCSOA could not be applied retroactively to void the jurisdiction of a court as to orders previously made. *In re Keighley* (Dec. 3, 1999) Union App. No. 14–99–33, unreported, 1999 WL 1084269, quoting Section 1738B(f), Title 28, U.S.Code.

The Georgia Court of Appeals addressed this very issue in *Georgia Dept. of Human Resources v. Deason* (1999), 238 Ga.App. 853, 863, 520 S.E.2d 712, 719. The court first looked to the legislative history and found no express statement of Congress's intent regarding retroactivity. However, the court found that the clear language and purpose of the Act is "that of remedial legislation, looking toward retroactive application," and concluded that the purpose of the Act would be frustrated unless applied retroactively. *Id.* Numerous other jurisdictions have reached the same conclusion. See, *e.g., Twaddell v. Anderson* (1999), 136 N.C.App. 56, 523 S.E.2d 710; *In re Marriage of Yuro* (1998), 192 Ariz. 568, 968 P.2d 1053; *Peterson v. Israel* (1998), Conn. Super. No. FA 97 0716665, unreported, 1998 WL 457919; *Div. of Child Support Enforcement v. Debussy* (Del.Fam. 1997), 707 A.2d 44; *Day v. State Dept. of Social & Rehab. Servs.* (1995), 272 Mont. 170, 900 P.2d 296; *In re Marriage of Lurie* (1995), 33 Cal.App.4th 658, 39 Cal.Rptr.2d 835; *Isabel M. v. Thomas M.* (N.Y.Fam.1995), 164 Misc.2d 420, 624 N.Y.S.2d 356.

In Ohio, the legislature has no constitutional authority to enact retroactive legislation. Section 28, Article II, Ohio Constitution. However, it has long been recognized that the ban against retroactive legislation is applicable solely to substantive, as opposed to remedial or procedural, laws. *Gregory v. Flowers* (1972), 32 Ohio St.2d 48, 61 O.O.2d 295, 290 N.E.2d 181; *Smith v. New York Cent. RR. Co.* (1930), 122 Ohio St. 45, 170 N.E. 637; *Rairden v. Holden* (1864), 15 Ohio St. 207. Application of a statute that affects procedural rather than substantive rights to causes arising prior to the statute's effective date but tried thereafter is not an impermissible retroactive application. *Denicola v. Providence Hosp.* (1979), 57 Ohio St.2d 115, 11 O.O.3d 290, 387 N.E.2d 231; *Kilbreath v. Rudy* (1968), 16 Ohio St.2d 70, 45 O.O.2d 370, 242 N.E.2d 658. Indeed, the application of a statute affecting procedural rights to all causes tried after the effective date of the statute "constitutes prospective operation as, in such instances, the date of the trial is the reference point from which prospectivity and retroactivity are measured." *Rumery v. Myles* (1983), Henry App. No. 7-83-1, unreported, 1983 WL 7315.

Remedial legislation operates to correct defects in existing law and relates to a remedy, or the rules of practice or procedure, as distinguished from those acts which create and define substantive rights. *Showalter v. A.C. Williams Co.* (1983), 13 Ohio App.3d 199, 13 OBR 247, 468 N.E.2d 742. The FFCCSOA is remedial in nature because it does not change any substantive rights of the parties or enlarge the jurisdiction of the court. *Deason*, 238 Ga.App. at 863–864, 520 S.E.2d at 719–720. The FFCCSOA merely reinforces the support obligation that arises at birth by providing a procedural framework for enforcing one state's support order in another jurisdiction. *Id.* The statute further attempts to reconcile an existing inconsistency in the law, and, as such, is remedial in nature. As a remedial statute, and one not affecting substantive rights, it is proper that the FFCCSOA be applied retroactively. *Id.*; accord *Child Support Enforcement Div. of Alaska v. Brenckle* (1997), 424 Mass. 214, 675 N.E.2d 390; Sowald at 62, Section 23.30.

Having concluded that the FFCCSOA is a remedial statute that should be applied retroactively to correct the inconsistencies inherent in the application of the various URESA statutes, we must next determine the effect of its application in the case *sub judice*. Pursuant to the FFCCSOA, if one or more child support orders have been issued with regard to an obligor and a child, a court shall apply the following rules in determining which order to recognize:

"(1) If only 1 court has issued a child support order, the order of that court must be recognized.

"(2) If 2 or more courts have issued child support orders for the same obligor and child, and only 1 of the courts would have continuing, exclusive jurisdiction under this section, the order of that court must be recognized.

" * * *

"(5) The court that has issued an order recognized under this subsection is the court having continuing, exclusive jurisdiction under subsection (d). Section 1738B(f)(1), (2), and (5), Title 28, U.S.Code."

 The parties dispute whether the California order was a proper modification of the Ohio order under URESA, or whether the remedy was in addition to the Ohio order. However, when applying the priority scheme set forth above, the FFCCSOA does not require us to make this distinction. The Act defines "child support order" as "a judgment, decree, or order of a court requiring the payment of child support in periodic amounts." 1738B(b). It is clear that both the Ohio and California support orders fall under the statutory definition, and conformed with the FFCCSOA's requirements when issued. See Section 1738B(c), Title 28, U.S.Code. Furthermore, there is no question that the orders pertain to the same obligor and children.

 Pursuant to 1738B(d), the state with continuing, exclusive jurisdiction is "the child's State or the residence of any individual contestant unless the court of another State, acting in accordance with subsections (e) and (f), has made a modification of the order." Under the plain language of the statute, Ohio does not have continuing, exclusive jurisdiction as none of the parties reside in the state. Section 1738B(e)(2)(A), Title 28, U.S.Code. However, Ohio does retain authority to enforce the Ohio order with respect to any unsatisfied obligation that accrued prior to the issuance of the California order. Section 1738B(g), Title 28, U.S.Code.

Accordingly, the first three assignments of error are sustained. At this time, Ohio may only enforce its child support order that was in effect from July 8, 1988, to January 1, 1991. For all other purposes, the Placer County, California court now has continuing, exclusive jurisdiction over this matter pursuant to the FFCCSOA.

The decision of the trial court is reversed and this matter is remanded to the trial court for the limited purpose of determining if an arrearage has accrued under the Ohio support order during the time such order was effective. If so, the trial court is to determine whether any portion of the arrearage remains outstanding after properly crediting appellant for payments made toward the support obligation and arrearage under the California order.

Having reversed the trial court's decision on appellant's first three assignments of error, appellant's remaining assignment of error is rendered moot.

The judgment is reversed and this matter is remanded to the trial court for further proceedings.

*Judgment accordingly.*

WILLIAM W. YOUNG and WALSH, JJ., concur.