522 S.E.2d 835

**Brenda BADEAUX, Respondent,**

v.

**Billy D. DAVIS, Appellant.**

**No. 3047.**

Court of Appeals of South Carolina.

Submitted Sept. 8, 1999.

Decided Sept. 20, 1999.

198

David D. Armstrong and Cameron G. Boggs, both of Armstrong Law Firm, of Greenville, for Appellant.

Deidre Rihtarchik, of the SC Department of Social Services, Division of Child Support Enforcement, of Greenville, for Respondent.

ANDERSON, Judge:

Billy D. Davis (Father) appeals from a civil contempt order finding him in arrears for failing to pay child support to Brenda Badeaux (Mother) pursuant to a foreign child support order registered in South Carolina. The judge found arrears of $19,356.16, calculated to April 23, 1998, but terminated the ongoing support as of the day the youngest child reached eighteen, January 15, 1998. On that date, the arrears totaled $17,914.16. We affirm in part, reverse in part, and remand.[1]

### FACTS/PROCEDURAL BACKGROUND

Mother and Father were married in April of 1976. They had two children, Christopher Ervin Davis, born March 2, 1975, and Isom Dean Davis, born January 15, 1980. Mother and Father subsequently divorced in Mississippi on December 17, 1981. Pursuant to the divorce decree, Mother was awarded custody of the two children, subject to reasonable visitation. The divorce decree ordered:

IT IS, FURTHER, ORDERED, ADJUDGED, AND DE-CREED that the Defendant [Father] has been paying until

---

[1]. Because oral argument would not aid the Court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

the date of this hearing, and shall continue to pay the sum of $100.00 per week unto the Complainant [Mother], as child support for the minor children of the parties, said sum to be paid through the Offices of the Chancery Clerk of Forrest County, Mississippi, by cash, check, or money order.

After the divorce, Father moved to South Carolina. Mother and the children remained in Mississippi.[2] The South Carolina Department of Social Services (DSS), at the request of the State of Mississippi, filed a Notice of Filing and Registration of Foreign Support Order. The registration was challenged by Father. The registration of the order was confirmed on November 2, 1995, but the issue of Father's child support arrears was held in abeyance until DSS could contact Mississippi, the initiating state. DSS was to determine the correct amount of the arrears.

Father was ordered to continue paying support as required by the divorce decree. However, he continued falling behind on his payments. According to the Spartanburg County records, the Mississippi Court set arrears at $18,508.89 as of the end of November 1996. On March 24, 1998, a Rule to Show Cause for Father's failure to pay child support was issued by the Family Court for the Seventh Judicial Circuit. The Clerk of Court averred that Father: "has failed to make support payments as required by the Order of the Family Court dated 1/09/97 and that the amount due as of 3/24/98 is $18,944.16."

On April 24, 1998, Father owed $19,356.16. At the hearing, Father admitted he stopped paying support when the younger child turned 18. When asked about his children, Father said: "They're both grown." The testimony continued:

The Court: One of their dates of birth is 1980; which would put him at?

The Defendant: Eighteen years old.

The Court: Where is the child?

The Defendant: In—he's in Mississippi.

The Court: Where is the mother?

The Defendant: Mississippi.

---

2. Father contends at least part of the time he was to pay support, the youngest child lived with him. However, at the time of the hearing he stated that the child was in Mississippi.

The Court: We got some information from somebody saying that your obligation was until age 21.

The Defendant: I don't know anything about that. The boy quit school when he was 17; turned 18 on January fifteenth. He's got a job working. That's when I stopped paying after he was 18.

The Court and DSS entered into a discussion as to the requirements of Father's obligation. Judge Foster ruled at the hearing:

Ms. Rihtarchik is going to check into getting an adjustment because the other child was 18 five years ago. You may be entitled to it, but it's not being set today. We are also going to check on the age from Mississippi law, but, until that, I will ask you to pay Fifty Dollars a week, which is Two Hundred Dollars a month until we get this paid off. That starts May the 1st. She will be back in touch with you, and she will also set up a hearing about the other arrearages.

In his written order, the judge found the arrears owed were $19,356.16. However, he decided to terminate support as of the date the younger child turned 18, and set arrears on that date at $17,914.16. He ordered Father to pay $50.00 (plus 3% court costs) per week commencing May 1, 1998.

Father appeals the order of the Family Court arguing the judge: (1) failed to make findings of fact sufficient to support the order; (2) erred by listing two separate amounts for arrears on the order; and (3) erred in signing an order contrary to his holding at the hearing. DSS responded denying error, and also asserting the Family Court, operating as the responding tribunal, was without jurisdiction to modify the Mississippi order under the Uniform Interstate Family Support Act (UIFSA), S.C.Code Ann. § 20–7–960 *et seq.* (Supp. 1998).

## ISSUES

I. Did the judge err in calculating arrears without recording his findings of fact?

II. Did the judge err in listing two separate amounts for arrears in his order?

III. Did the judge err in signing an order that was contrary to some of his holdings at the Rule hearing.

IV. Does a South Carolina Family Court have subject matter jurisdiction under UIFSA to modify a Mississippi order for support registered in South Carolina? [3]

## *STANDARD OF REVIEW*

■ In appeals from the family court, the Court of Appeals has the authority to find the facts in accordance with its own view of the preponderance of the evidence. *Rutherford v. Rutherford*, 307 S.C. 199, 414 S.E.2d 157 (1992); *Charest v. Charest*, 329 S.C. 511, 495 S.E.2d 784 (Ct.App.1997); *Owens v. Owens*, 320 S.C. 543, 466 S.E.2d 373 (Ct.App.1996). This broad scope of review does not, however, require this Court to disregard the findings of the family court. *Stevenson v. Stevenson*, 276 S.C. 475, 279 S.E.2d 616 (1981).

## *LAW/ANALYSIS*

### I. Rule 26(a), SCRFC

■ Father raises several issues for consideration regarding the validity of the order issued by the Family Court. His first contention is the order does not comply with Rule 26(a), SCFCR, in failing to set forth adequate findings of fact to support the Court's determination of arrears. We disagree.

Rule 26(a), SCRFC provides:

An order or judgment pursuant to an adjudication in a domestic relations case shall set forth the specific findings of fact and conclusions of law to support the court's decision.

■ Father argues that under *Atkinson v. Atkinson*, 279 S.C. 454, 309 S.E.2d 14 (Ct.App.1983) and *Aycock v. Aycock*, 284 S.C. 193, 324 S.E.2d 650 (Ct.App.1984), this Court should remand the Family Court order for a de novo hearing. Generally, where an order of the Family Court fails to comply with Rule 26(a), the appellate court should reverse and remand so the Family Court may make specific findings of fact. *Blumberg v. Nealco, Inc.*, 310 S.C. 492, 427 S.E.2d 659 (1993).

---

**3.** Issue IV. was raised in brief by the Respondent. All other issues were raised by Appellant.

"However, when an order from the family court is issued in violation of Rule 26(a), SCRFC, the appellate court 'may remand the matter to the trial court or, where the record is sufficient, make its own findings of fact in accordance with the preponderance of the evidence.'" *Griffith v. Griffith,* 332 S.C. 630, 647, 506 S.E.2d 526, 535 (Ct.App.1998) (citing *Holcombe v. Hardee,* 304 S.C. 522, 524, 405 S.E.2d 821, 822 (1991)). *See also, Bull v. Smith,* 299 S.C. 123, 382 S.E.2d 905 (1989) (Appellate Court may make an independent review of the record to make findings of fact where the Family Court's order fails to make such findings in compliance with Family Court Rule 26(a)).

In the case at hand, the record is sufficient for this Court to make necessary findings of fact. While the order of the Family Court does not articulate specific calculations or references to where the amounts listed were derived, the record contains the Spartanburg County Family Court official pay history for Father's support. A review of the record shows Father was in arrears $19,356.16 as of the date of the hearing, as listed in the order by the Family Court.

## II. Multiple Arrearage Listed in Family Court Order

Father professes it was error for the Family Court to list two different amounts of arrears in its order. He challenges the Family Court was without any evidence to set the two amounts and failed to consider all the evidence in making its determinations. We disagree.

The Family Court listed at the top of its order the amount of arrears owed by Father as of the date of the hearing, $19,356.16. The second amount is listed on the bottom of the form after the judge noted:

Children emancipated 1–15–98 (if 18 is Miss. law). Dss to investigate Miss. law—also some adjustment needs to be made because 1 child was 18 on 3–2–93.

He listed arrears of $17,914.16, which was determined by the judge as the amount owed as of the younger child's eighteenth birthday. The Family Court judge was attempting to ease the burden on Father by terminating his support obligation ac-

cording to South Carolina law.[4] The judge observed the modification will be allowed only if allowable under Mississippi law. Father's contention of error is without merit.

### III. Inconsistent Oral and Written Holdings by Family Court

■ Father next maintains the Family Court erred in improperly signing an order inconsistent with the Court's decisions announced at the hearing. Father asseverates the family court erred in issuing a written order setting the amount of his arrearage despite the court's comments from the bench that an additional hearing may be necessary to determine if, and if so when, the parties' children became emancipated pursuant to Mississippi law. We disagree.

■ It is well settled that a judge is not bound by a prior oral ruling and may issue a written order which is in conflict with the oral ruling. *First Union Nat. Bank of South Carolina v. Hitman, Inc.*, 308 S.C. 421, 418 S.E.2d 545 (1992). In any case, our review of the judge's comments from the bench and the order reveals no inconsistency between the two. The judge expressly stated on the record, as well as on the face of the order, that his determination of the amount of the father's child support arrearage was made under the assumption that the age of emancipation in Mississippi is eighteen. Moreover, the judge made clear that his determination of the arrearage was subject to further review pending the receipt of further pertinent information. The judge's written order was not made in error.

### SUBJECT MATTER JURISDICTION

Mother contends under the Uniform Interstate Family Support Act (UIFSA), S.C.Code Ann. § 20–7–960 *et seq.*, the Family Court in South Carolina lacks subject matter jurisdiction to alter or modify a valid order from Mississippi which has been registered in South Carolina. She also asserts that any findings of fact in regards to whether Father must continue paying support until the younger child reaches 21, or

---

4. As set forth below, the modification by the judge is in error, however, his listing of multiple amounts of arrearage will not constitute reversible error.

if the child is deemed emancipated under Mississippi law, should take place in the order's initiating state, Mississippi. We agree.

## I. Preservation of Subject Matter Jurisdiction

 "Lack of subject matter jurisdiction can be raised at any time, can be raised for the first time on appeal, and can be raised *sua sponte* by the court." *Lake v. Reeder Const. Co.*, 330 S.C. 242, 248, 498 S.E.2d 650, 653 (Ct.App.1998). The jurisdiction of a court over the subject matter of a proceeding is determined by the Constitution, the laws of the state, and is fundamental. Lack of subject matter jurisdiction may not be waived, even by consent of the parties, and should be taken notice of by this Court. *Anderson v. Anderson*, 299 S.C. 110, 115, 382 S.E.2d 897, 900 (1989). *See Fielden v. Fielden*, 274 S.C. 219, 262 S.E.2d 43 (1980); *Harden v. South Carolina State Highway Dept.*, 266 S.C. 119, 221 S.E.2d 851 (1976); *State v. Gorie*, 256 S.C. 539, 183 S.E.2d 334 (1971). In personam jurisdiction may be waived; subject matter jurisdiction may not be waived and the issue may be raised at any stage of the proceeding. *Eaddy v. Eaddy*, 283 S.C. 582, 324 S.E.2d 70 (1984). Even though the issue of the Family Court's subject matter jurisdiction was not raised until appeal, and it was raised by the respondent, it is the duty of this court to take notice and determine if the Family Court had proper jurisdiction for its actions.

## II. Background of UIFSA

UIFSA was drafted by the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association. Congress made adoption of UIFSA mandatory if states were to continue receiving federal funding for their child support services. See 42 U.S.C. § 666(f).

Concomitant with the flurry of activity regarding state child support guidelines, ..., the move to unify interstate child support cases will culminate on Dec. 31[, 1997], with the mandatory adoption by all states of the Uniform Interstate Family Support Act (UIFSA). With the enactment of UIFSA ..., the federal government has attempted to make processing of the cases more efficient and effective, and to put some teeth into the "dead-beat" parent program.

Carole Princer Levy, *Mandatory Adoption by the New Year: The Feds Move to Unify Child Support Enforcement With UIFSA,* Matrimonial Strategist, Aug. 1997, at 1.

The drafters, in the introduction to the uniform law, state:

Under RURESA [Revised Uniform Reciprocal Enforcement of Support Act], the majority of support proceedings were de novo. Even when an existing order of one State was "registered" in a second State, the registering State often asserted the right to modify the registered order. This meant that multiple support orders could be in effect in several States. Under UIFSA, the principal of continuing, exclusive jurisdiction aims, as far as possible, to recognize that only one valid support order may be effective at any one time.

Unif. Interstate Family Support Act, 9 U.L.A. pt. I (Supp. 1998)

South Carolina passed UIFSA to replace the Uniform Reciprocal Enforcement of Support Act (URESA), S.C.Code Ann. § 20–7–960 *et seq.* (1976). According to S.C.Code Ann. § 20–7–965 (1976): "The purposes of [URESA] are to improve and extend by reciprocal legislation the enforcement of duties of support." Under URESA, South Carolina had the authority to modify an existing foreign support order once registered. *See Deltoro v. McMullen,* 322 S.C. 328, 471 S.E.2d 742 (1996). By allowing multiple jurisdictions to all have authority to modify support orders, URESA resulted in multiple orders; sometimes creating inconsistent obligations.

UIFSA was promulgated in an effort to correct this problem. It established a system of priority for issued support orders which all states have to follow. "UIFSA has dealt with this major flaw by establishing priority among orders to achieve 'one order, one time, one place.' ... Thus, for the first time, all states will be enforcing the same amount." Laura W. Morgan, *Interstate Enforcement of Support: A Short Primer on Federal and Uniform Law,* Divorce Litigation, April 1997, at 72.

The intent of the act is to achieve "rough justice" between the parties by mandating that the petitioner, whether it be the obligor or the obligee, seek a modification in a state other than the petitioner's state of residence. This is done

by first registering the order in the state where, most typically, the responding party resides—the state that has personal jurisdiction over the respondent. . . .

. . . .

The policy rationale of "rough justice" is to prevent the kind of forum shopping that took place under the earlier RURESA. . . . It puts an end to the practice of an obligee receiving a divorce in one state, moving to another state and gaining long-arm jurisdiction over the obligor to take advantage of that state's more favorable child support laws. It also ends the practice of an obligor moving to a state with archaic child support laws, waiting for an enforcement proceeding to be filed and then litigating the issue in a more favorable climate. Furthermore, it ends "jurisdiction by ambush" where parents, by virtue of exercising their visitation rights in the state, delivering or picking up a child for visitation or simply engaging in unrelated business in the state, were involuntarily subjected to protracted litigation in that forum. Parents can now exercise their visitation rights without yielding jurisdiction to modify a child support order. . . . Also, having the petitioner submit to the respondent's state of residence alleviates the former problem of multiple, and often conflicting, child support modification orders by ending disputes about which tribunal may modify the order once the issuing state loses continuing, exclusive jurisdiction. . . . It is a commonsense solution to what at one time was a pervasive problem.

*Cepukenas v. Cepukenas,* 221 Wis.2d 166, 584 N.W.2d 227, 230 (Ct.App.1998).

## III. Application of UIFSA

### A. Priority and "Controlling, Exclusive Jurisdiction"

 UIFSA became effective in South Carolina on July 1, 1994. South Carolina Code Ann. § 20–7–1010 establishes the priority of child support orders for recognition in this state. Section 20–7–1010(A) (Supp.1998) states:

If a proceeding is brought under this subarticle and only one tribunal has issued a child support order, the order of that tribunal is controlling and must be recognized.

In the instant case, the Mississippi order is the only child support order issued affecting these parties, and thus is controlling.

According to § 20–7–1010(D) (Supp.1998):

The tribunal that issued the order that must be recognized as controlling under subsection (A) ... is the tribunal that has continuing, exclusive jurisdiction in accordance with § 20–7–1000.

Section 20–7–1000(D) (Supp.1998) reads:

A tribunal of this State shall recognize the continuing, exclusive jurisdiction of a tribunal of another state which has issued a child support order pursuant to a law substantially similar to this subarticle.

The drafters of the uniform version declared:

This is the most crucial provision in UIFSA.... As long as one of the individual parties or the child continues to reside in the issuing State, and as long as the parties do not agree to the contrary, the issuing tribunal has continuing, exclusive jurisdiction over its order—which in practical terms means that it may modify its order.

Unif. Interstate Family Support Act § 205, 9 U.L.A. pt. I, cmt. at 350 (Supp.1998).

Apodictically, Mississippi retains the continuing exclusive jurisdiction afforded the issuing tribunal under UIFSA. Once the support order is registered in South Carolina, it is to be enforced in its entirety unless South Carolina can establish jurisdiction through a proper modification of the order.

## B. Registration

Pursuant to S.C.Code Ann. § 20–7–1132 (Supp.1998):

A support order or an income withholding order issued by a tribunal of another state may be registered in this state for purposes of enforcement.

In this case, Mother was seeking to have the order enforced, while Father was looking to modify the amount. Father sought credit for time that the children lived with him and for a termination of his obligation upon the date the youngest

child turned 18. UIFSA allows a party to register a support order and seek to modify it at the same time.

Under § 20–7–1148 (Supp.1998):

A party or support enforcement agency seeking to modify or modify and enforce a child support order issued in another state shall register that order in this State in the same manner as provided in Sections 20–7–1132 through 20–7–1138.

Registration is the first step to having the order enforced or modified. The statute set out the procedure for filing in § 20–7–1134. A party seeking to contest registration must prove one of seven narrowly defined defenses. The possible defenses are:

(1) the issuing tribunal lacked personal jurisdiction over the contesting party;

(2) the order was obtained by fraud;

(3) the order has been vacated, suspended, or modified by a later order;

(4) the issuing tribunal has stayed the order pending appeal;

(5) there is a defense under the law of this State to the enforcement remedy sought;

(6) full or partial payment has been made; or

(7) the statute of limitations under section 20–7–1138 precludes enforcement of any arrearage.

§ 20–7–1144(A) (Supp.1998).

The Mississippi order was registered in South Carolina. At the same time, the issue of arrears was held in abeyance. Father was seeking to modify the amount due to the younger child turning 18 and possibly being emancipated. Under UIFSA, unless there is a proper defense to registration, or the order can be properly modified under §§ 20–7–1148 through 20–7–1152, enforcement of the existing order is mandatory. According to § 20–7–1136(B) and (C):

A registered order of another state has the same effect and is subject to the same procedures and defenses as an order of this State and may be enforced and satisfied in the same manner.

Except as provided in Sections 20–7–1132 through 20–7–1154, a tribunal of this State *shall* recognize and enforce and may *not* modify a registered order if the issuing tribunal had jurisdiction. (Emphasis added.)

At the time of registration, Father was ordered to continue paying support in accordance with the Mississippi order.

## C. Modification

The issue involved in the case *sub judice,* is whether upon hearing evidence of the amount of arrears, a court in South Carolina can modify a controlling order. A South Carolina Family Court acting as responding tribunal can only enforce the order as registered and does not have authority to modify the order under UIFSA.

URESA generally required the law of the state seeking to enforce the support order to apply. However, under UIFSA, and S.C.Code Ann. § 20–7–1138(A) (Supp.1998):

The law of the issuing State governs the nature, extent, amount, and duration of current payments and other obligations of support and the payment of arrearages under the order.

The effect of the choice of law provision is the order remains an order of the issuing state so long as that state retains continuing, exclusive jurisdiction. It means that even if emancipation occurs in South Carolina at 18, a support order issued in Mississippi, where emancipation is 21, and registered in South Carolina must be enforced until the child reaches 21. See Miss.Code Ann. § 93–11–65 (1972). The judge's determination of arrears as of the youngest child's 18 birthday was in error, unless the South Carolina Family Court had proper authority to modify the support order.

The ability of a responding state to modify an existing order is strictly limited by UIFSA. According to S.C.Code Ann. § 20–7–1152 (Supp.1998):

(A) After a child support order of another state has been registered in this State, unless Section 20–7–1154 applies, the responding tribunal of this State may modify that order only if, after notice and a hearing, it finds that:

(1) these requirements are met:

(a) the child, the individual obligee, and the obligor do not reside in the issuing state;

(b) a plaintiff who is a nonresident of this State seeks modification; and

(c) the defendant is subject to the personal jurisdiction of a tribunal of this State; or

(2) an individual party or the child is subject to the personal jurisdiction of a tribunal of this State and all parties have filed a written consent in the issuing tribunal providing that a tribunal of this State may modify the support order and assume continuing, exclusive jurisdiction over the order. However, if the issuing state is a foreign jurisdiction which has not enacted this subarticle, the written consent of the individual party residing in this State is not required for the tribunal to assume jurisdiction to modify the child support order.

Since Badeaux and the child in question currently live in Mississippi, the requirements of § 20–7–1152(A)(1) are not met. The record is devoid of any evidence that the parties consented for South Carolina to take continuing, exclusive jurisdiction from Mississippi. Indubitably, no tribunal of this state, including the Family Court involved in this case, has proper authority to modify the Mississippi child support order. If Davis wishes to have the order modified, he must pursue that modification in the tribunal with continuing, exclusive jurisdiction. The appropriate tribunal is in Mississippi.

Our holding of a lack of subject matter jurisdiction is consistent with many other states interpreting the same sections of UIFSA. In *Welsher v. Rager,* 127 N.C.App. 521, 491 S.E.2d 661, 664 (1997) the North Carolina Court of Appeals held:

Moreover, the record is devoid of any evidence that either (1) both parties consented to a modification, or (2) the issuing state had lost continuing, exclusive jurisdiction over the order. Hence, no court of this jurisdiction may properly vacate or modify [a registered New York] order.... If defendant wishes to have the order modified or vacated, he must pursue the matter in New York, which maintains continuing, exclusive jurisdiction over the order.

*See also, State ex rel. Havlin v. Jamison,* 971 S.W.2d 938 (Mo.App. E.D.1998); *Matter of Marriage of Cooney,* 150 Or. App. 323, 946 P.2d 305 (1997); *State, Dept. of Human Services v. Jacoby,* 975 P.2d 939, (Utah App.1999); *In re Marriage of Zinke,* 967 P.2d 210 (Colo.App.1998); *Office of Child Support Enforcement v. Cook,* 60 Ark.App. 193, 959 S.W.2d 763 (1998); *Peddar v. Peddar,* 43 Mass.App.Ct. 192, 683 N.E.2d 1045 (1997); *Hinton v. Hinton,* 128 N.C.App. 637, 496 S.E.2d 409 (1998); *Link v. Alvarado,* 929 S.W.2d 674 (Tex.App.1996); *Gentzel v. Williams,* 25 Kan.App.2d 552, 965 P.2d 855 (1998).

 A court in South Carolina may calculate the arrears due under a registered support order, however, that calculation must be done in accordance with the terms of the order as issued by the controlling jurisdiction.

> [T]he trial court in the responding state is authorized to determine the amount of arrears and the method of payment. [S.C.Code Ann. § 20–7–1045(B)(4) (Supp.1998) ].... [W]e hold that this provision allows the responding courts to perform only a ministerial function and does not contemplate relitigation of issues determined in the order or interpretation of the order under the responding state's law.

*State, By and Through Albemarle Child Support Enforcement Agency ex rel. George v. Bray,* 130 N.C.App. 552, 503 S.E.2d 686 (1998).

## IV. FFCCSOA

 A federal statute, the Full Faith and Credit for Child Support Orders Act (FFCCSOA), 28 U.S.C. § 1738B (West Supp.1999), also prohibits a South Carolina Court from modifying the order of a jurisdiction which maintains continuing, exclusive jurisdiction. FFCCSOA became effective in 1994 and is very similar to UIFSA in both purpose and structure.

The Congressional Findings and Declaration of Purpose in Pub.L. 103–383 § 2, provided:

(a) Findings.—The Congress Finds that—

(1) there is a large and growing number of child support cases annually involving disputes between parents who reside in different States;

(2) the laws by which the courts of different jurisdictions determine their authority to establish child support orders are not uniform;

. . . .

(b) Statement of Policy.—In view of the findings made in subsection (a), it is necessary to establish national standards under which the courts of the various States shall determine their jurisdiction to issue a child support order and the effect to be given by each State to child support orders issued by the courts of other States.

(c) Purposes.—The purposes of this Act . . . are—

(1) to facilitate the enforcement of child support orders among the States;

(2) to discourage continuing interstate controversies over child support in the interest of greater financial stability and secure family relationships for the child; and

(3) to avoid jurisdictional competition and conflict among State courts in the establishment of child support orders.

FFCCSOA establishes the same priority system as UIFSA. The rule applicable in this case is 28 U.S.C.A. § 1738B(f)(1): "If only 1 court has issued a child support order, the order of that court must be recognized." FFCCSOA also contains the policy of continuing, exclusive jurisdiction found in UIFSA. According to 28 U.S.C.A. § 1738B(d):

Continuing Jurisdiction.—A court of a State that has made a child support order consistently with this section has continuing, exclusive jurisdiction over the order if the State is the Child's State or the residence of any individual contestant unless the court of another State, acting in accordance with subsections (e) and (f), has made a modification of the order.

Congruent with the outcome under UIFSA, the Mississippi order is to be recognized as controlling and only Mississippi jurisdictions maintain controlling, exclusive jurisdiction.

Consistent with UIFSA, in order to modify an existing order, FFCCSOA requires:

A court of a State may modify a child support order issued by a court of another State if—

(1) the court has jurisdiction to make such a child support order pursuant to subsection (i) [requiring no party reside in the issuing state and the order is registered in the State with jurisdiction over the nonmovant party]; and

(2)(A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any individual contestant; or

(B) each individual contestant has filed written consent with the State of continuing, exclusive jurisdiction for a court of another State to modify the order and assume continuing, exclusive jurisdiction over the order.

Mother, and at least one child, resided in Mississippi at the time of the hearing. Therefore the order could not be modified under subsection (2)(A). There is no evidence in the record before us showing filed written consent on behalf of any parties to this action, so modification is not proper under subsection (2)(B). FFCCSOA is harmonious in its result; the Family Court was without proper subject matter jurisdiction and therefore the modification of the child support order was invalid. *See State, By and Through Albemarle Child Support Enforcement Agency ex rel. George v. Bray,* 130 N.C.App. 552, 503 S.E.2d 686 (1998); *Hinton v. Hinton,* 128 N.C.App. 637, 496 S.E.2d 409 (1998); *Welsher v. Rager,* 127 N.C.App. 521, 491 S.E.2d 661 (1997).

## *CONCLUSION*

We find Mississippi remained the state with continuing, exclusive jurisdiction under both UIFSA and FFCCSOA. We hold the Family Court lacked subject matter jurisdiction to effectuate a modification of the Mississippi support order. If Davis wishes to seek modification of the order, the appropriate jurisdiction is Mississippi. South Carolina Courts have jurisdiction only to enforce the amount of support consistent with the registered order as written. The Family Court had jurisdiction to calculate the amount of arrears owed under the Mississippi order. Therefore, the portion of the order finding Davis in arrears $19,356.16, as of the date of the hearing is affirmed. The remainder of the Family Court's order modifying the registered child support order is reversed, and this

matter is remanded to the Family Court for enforcement proceedings not inconsistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

GOOLSBY and CONNOR, JJ., concur.