597 S.E.2d 859

**SCDSS/CHILD SUPPORT ENFORCEMENT, o/b/a Washington State and Denisse Brady, Plaintiffs,**

**of whom SCDSS/Child Support Enforcement is Appellant,**

v.

**Thomas S. CARSWELL, Respondent.**

No. 3816.

Court of Appeals of South Carolina.

Heard May 12, 2004.

Decided June 1, 2004.

John Edward Chambers, Jr., of Greenville, for Appellant.

Adam Fisher, Jr., of Greenville, for Respondent.

ANDERSON, J.

This action arose when the South Carolina Department of Social Services sought to register and enforce an out-of-state child support order. The family court dismissed the action,

finding the order had already been registered and superseded by a previous South Carolina order. We reverse and remand.

## *FACTUAL/PROCEDURAL BACKGROUND*

This action initially arose in South Carolina in 1991 when the South Carolina Department of Social Services ("DSS") sought enforcement of a State of Washington order requiring Thomas S. Carswell, a resident of South Carolina and father of two children with Denisse T. Carswell, to pay child support in the amount of $478.00 per month and day care expenses of $278.00 per month. This enforcement action was brought by DSS at the request of Denisse T. Carswell, a resident of Washington, and pursuant to the Uniform Reciprocal Enforcement of Support Act. *See* S.C.Code Ann. § 20–7–960 (1985). Respondent Thomas S. Carswell ("Carswell") answered and counterclaimed, seeking a modification of the order because of a substantial reduction in wages and a change in circumstance that obviated the mother's need for daycare expenses.

DSS and Carswell consented to a reduction in child support, which resulted in a September 18, 1991 family court order requiring a child support payment of $41.20 per week and a supplemental payment of $10.30 a week to satisfy the arrearages. This order was further modified by three South Carolina orders that either increased amounts of support or altered the payment schedule from a weekly payment to a monthly payment. No South Carolina order ever explicitly nullified the Washington order.

In 2002, DSS filed a Notice of Filing and Registration of Foreign Support Order, which sought to register the Washington order for enforcement, collect arrearages in the amount of $45,333.02, and institute wage withholding. Significantly, this action did not arise because Carswell's support obligation was in arrears, but because DSS contends that it has the right to seek enforcement of the original Washington order. In fact, Carswell had made advance payments. Carswell filed a motion to dismiss. The family court found only one support order continued to exist, the modifying order issued by the South Carolina court. The court ruled:

That there exists only one support order, the modified order of support issued on September 18th, 1991 by this Court.

While this Court continued to have jurisdiction to modify its order of support plaintiff sought a modification of the September 18th, 1991 support order, and defendant's child support was increased by this Court's order dated October 7th, 1992.

The only order of child support to be enforced by this Court is the Court's order of October 7th, 1992.

DSS argues the court erred in failing to find there were two enforceable orders, the Washington and South Carolina orders, and in not applying the Full Faith and Credit for Child Support Orders Act to the Washington order.

## STANDARD OF REVIEW

In appeals from the family court, the court of appeals has the authority to find the facts in accordance with its own view of the preponderance of the evidence. *Davis v. Davis*, 356 S.C. 132, 135, 588 S.E.2d 102, 103 (2003); *Badeaux v. Davis*, 337 S.C. 195, 202, 522 S.E.2d 835, 838 (Ct.App.1999). However, this broad scope of review does not require this court to disregard the findings of the family court. *Scott v. Scott*, 354 S.C. 118, 124, 579 S.E.2d 620, 623 (2003); *Wooten v. Wooten*, 356 S.C. 473, 476, 589 S.E.2d 769, 770 (Ct.App.2003).

## LAW/ANALYSIS

### I. The family court erred in failing to find there existed two enforceable child support orders.

At the time of entry for both the Washington and initial South Carolina orders, the Uniform Reciprocal Enforcement of Support Act ("URESA") governed the enforcement of interstate support orders. While the Uniform Interstate Family Support Act is a successor statutory framework, it did not become effective until July 1, 1994, and URESA remains the applicable law for the enforcement of rights, forfeitures, and liabilities as they stood under URESA. *South Carolina Dep't. of Soc. Servs. v. Hamlett*, 330 S.C. 321, 324, 498 S.E.2d 888, 890 (Ct.App.1998).

■ URESA was designed to improve and extend enforcement of support obligations against obligors in other states. *Baugh v. Baugh,* 280 S.C. 59, 61, 309 S.E.2d 756, 757 (1983). URESA allows an out-of-state support order to be registered in this State and then enforced as a support order issued by this State. S.C.Code Ann. §§ 20–7–1150 and 20–7–1155 (1985). In 1991, Appellant brought an action pursuant to URESA to enforce a Washington order that required Respondent to pay monthly child support and contribute to daycare expenses. An agreement was made between the parties that Respondent would pay an amount less than the Washington order required, and an order stating that the "Parties Agree" was entered by the court codifying this agreement. This modification of the support order was allowed under URESA. *See Balestrine v. Jordan,* 275 S.C. 442, 443–44, 272 S.E.2d 438, 438–39 (1980).

■ In 2002, DSS sought to file and register the Washington order so that it could enforce the support obligation, collect arrearages, and institute wage withholding. The family court dismissed the case after finding only the South Carolina order was entitled to enforcement. This was error.

Importantly, under the statutory framework created by URESA, multiple support orders can exist. *Badeaux v. Davis,* 337 S.C. 195, 206, 522 S.E.2d 835, 840 (Ct.App.1999). Section 20–7–1110 of URESA states:

A support order made by a court of this State pursuant to this subarticle does not nullify and is not nullified by a support order made by a court of this State pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law regardless of priority of issuance *unless otherwise specifically provided by the court.* Amounts paid for a particular period pursuant to any support order made by the court of another state must be credited against the amounts accruing or accrued for the same period under any support order made by the court of this State.

(emphasis added); *see South Carolina Dep't of Soc. Servs. v. Hamlett,* 330 S.C. 321, 326, 498 S.E.2d 888, 890–91 (Ct.App. 1998) (citing URESA); *see also* Roy T. Stuckey, *Marital Litigation in South Carolina* 656–59 (3d ed., 2001) (discussing

URESA and specifically the required compliance with the antinullification clause).

The issue before this court is whether any of the South Carolina orders nullified the Washington order. A careful examination of the initial order, as well as the three subsequent South Carolina orders, fails to reveal any clear intent to nullify the Washington order. The only recognition of a Washington order occurs on the initial South Carolina order. On this order are the words "URESA—Washington (State)," apparently modifying the preprinted title, "Support Order." While this language acknowledges that the Order concerns an out-of-state support obligation governed by URESA, it does not rise to the level of a nullification of the Washington order. Therefore, the Washington order remains extant and enforceable.

## II. The Full Faith and Credit for Child Support Orders Act requires that the Washington order be recognized.

An additional legislative response to the need for a uniform and less complex system of interstate child support enforcement actions is the federal Full Faith and Credit for Child Support Orders Act ("FFCCSOA"), which has, as one of its purposes, the desire "to avoid jurisdictional competition and conflict among State courts in the establishment of child support orders." Full Faith and Credit for Child Support Orders Act, Pub.L. No. 103–383, § 2(c)(3), 108 Stat. 4064 (1994) (codified as Historical and Statutory Notes at 28 U.S.C.A. § 1738B (West 2003)). The FFCCSOA achieves this goal by creating a system where some court has continuing, exclusive jurisdiction over any support order. 28 U.S.C.A. § 1738B(d) (West 2003). Prior to ascertaining if Washington had continuing, exclusive jurisdiction, we must determine the efficacy of the FFCCSOA to this case.

The Washington order was dated in 1990 and the South Carolina order was issued in 1991. Both of these orders came prior to the 1994 effective date of the FFCCSOA. Therefore, we must decide if the FFCCSOA can be applied retroactively.

The FFCCSOA does not expressly provide for retroactive application. North Carolina and Georgia have determined the Act can and should be applied retroactively. *Georgia Dep't of*

*Human Res. v. Deason,* 238 Ga.App. 853, 520 S.E.2d 712, 719–20 (1999); *Twaddell v. Anderson,* 136 N.C.App. 56, 523 S.E.2d 710, 717 (1999); *see also In re Marriage of Yuro,* 192 Ariz. 568, 968 P.2d 1053, 1057 (App.1998); *Jennings v. DeBussy,* 707 A.2d 44, 46–48 (Del.Fam.Ct.1997); *Matter of Isabel M. v. Thomas M.,* 164 Misc.2d 420, 624 N.Y.S.2d 356, 357 (N.Y.Fam. Ct.1995).

■ These courts first noted the language and purpose of both the Act and the legislative history is of a remedial nature, which suggests a retroactive application to assist in the collection of past arrearages. *Deason,* 520 S.E.2d at 719; *Twaddell,* 523 S.E.2d at 717. Under South Carolina law, statutes that are remedial or procedural in nature are generally held to operate retrospectively. *See South Carolina Dep't of Revenue v. Rosemary Coin Mach., Inc.,* 339 S.C. 25, 28, 528 S.E.2d 416, 418 (2000); *Merchants Mut. Ins. Co. v. South Carolina Second Injury Fund,* 277 S.C. 604, 607, 291 S.E.2d 667, 669 (1982); *Hercules, Inc. v. South Carolina Tax Comm'n,* 274 S.C. 137, 143, 262 S.E.2d 45, 48 (1980) (noting statutes affecting the remedy, not the right, are generally retrospective). Therefore, the provisions of the FFCCSOA should be applied retroactively.

■ In addition to looking at whether the statute is remedial in nature, the United States Supreme Court has enunciated a test to determine if an injustice would occur as a result of the retroactive application of a law. The three factors to consider are: the nature and identity of the parties, the nature of their rights, and the nature of the impact of the change in law upon those rights. *Bradley v. Sch. Bd. of City of Richmond,* 416 U.S. 696, 717, 94 S.Ct. 2006, 2019, 40 L.Ed.2d 476, 491–92 (1974).

■ In the case at bar, the FFCCSOA does not impose a new obligation because a parent's support obligation arises at the birth of a child. *See generally Lunsford v. Lunsford,* 277 S.C. 104, 104, 282 S.E.2d 861, 862 (1981) (finding a parent has a legal obligation to support a minor child); *Campbell v. Campbell,* 200 S.C. 67, 72, 20 S.E.2d 237, 239 (1942) (recognizing it is nothing less than a "principle of nature" that a parent has an obligation to maintain and support his child). The statute deals with matters of great congressional concern, i.e.,

the need to enforce interstate child support orders. *Deason,* 520 S.E.2d at 720; *Twaddell,* 523 S.E.2d at 717. Finally, the obligor is not deprived of a right that has matured or become unconditional because the preexisting obligation remains the same. *Id.* Thus, under *Bradley,* the obligor suffers no injustice by the retroactive application of the FFCCSOA. *Id.*

■ Because we have established the FFCCSOA can be applied retroactively, we must discern the impact of the FFCCSOA on this case. The FFCCSOA settles the interrelationship between various support orders by creating a system where there is one court with continuing, exclusive jurisdiction. Roy T. Stuckey, *Marital Litigation in South Carolina* 653–55 (3d ed., 2001). The FFCCSOA states: "A court of a State that has made a child support order consistently with this section has continuing, exclusive jurisdiction over the order if the State is the child's State or the residence of any individual contestant unless the court of another State, acting in accordance with subsections (e) and (f), has made a modification of the order." 28 USCA § 1738B(d) (West 2003). Washington is the home of the child and has continuing, exclusive jurisdiction, unless the South Carolina order was a modification pursuant to the FFCCSOA.

In order to modify an existing order, the FFCCSOA requires:

> A court of a State may modify a child support order issued by a court of another State if—(1) the court has jurisdiction to make such a child support order pursuant to subsection (i) [requiring no party reside in the issuing state and the order is registered in the State with jurisdiction over the nonmovant party]; and (2)(A) the court of the other State no longer has continuing, exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any individual contestant; or (B) each individual contestant has filed written consent with the State of continuing, exclusive jurisdiction for a court of another State to modify the order and assume continuing, exclusive jurisdiction over the order.

28 U.S.C.A. § 1738B(e) (West 2003); *cf. Badeaux v. Davis,* 337 S.C. 195, 214, 522 S.E.2d 835, 845 (Ct.App.1999) (applying

the FFCCSOA and finding no modification to an out-of-state order filed pursuant to UIFSA).

The order was not modified under subsections (1) or (2)(A) because mother and child resided in Washington at the time of the hearing. Subsection (2)(B) does not apply because there is no evidence in the record that the contestants have filed written consent with Washington for South Carolina to modify the order and assume continuing, exclusive jurisdiction. *See Badeaux,* 337 S.C. at 214, 522 S.E.2d at 845. The FFCCSOA dictates that Washington has continuing, exclusive jurisdiction and that the Washington order be accorded full faith and credit by South Carolina.

### *CONCLUSION*

Because the family court erred in failing to find there existed two enforceable child support orders and in not applying the FFCCSOA, we

**REVERSE AND REMAND.**

GOOLSBY and HUFF, JJ., concur.