**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Nicole Powell and Kyle Parker, Defendants,

Of whom Nicole Powell is the Appellant.

In the interest of a minor under the age of eighteen.

Appellate Case No. 2016-002119

―――――――――――

Appeal From Spartanburg County
Rochelle Y. Conits, Family Court Judge

―――――――――――

Unpublished Opinion No. 2017-UP-267
Submitted May 26, 2017 – Filed June 27, 2017

―――――――――――

**AFFIRMED**

―――――――――――

Melinda Inman Butler, of The Butler Law Firm, of
Union, for Appellant.

Deborah Murdock Gentry, of Murdock Law Firm, LLC
of Mauldin; and Robert C. Rhoden, III, of the South
Carolina Department of Social Services, of Spartanburg,
both for Respondent.

John Brandt Rucker, of The Rucker Law Firm, LLC, of Greenville, as Guardian ad Litem for Appellant.

Wendy Nicole Griffith, of Talley Law Firm, P.A., of Spartanburg, for the Guardian ad Litem for the minor child.

───────────

**PER CURIAM:** Nicole Powell (Mother) appeals the family court's order terminating her parental rights to her minor son (Child).  On appeal, Mother argues the family court (1) lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA),[1] (2) erred in terminating her parental rights, and (3) erred in finding Child's permanent plan should be adoption without considering relative placement.  We affirm.

On appeal from the family court, this court reviews factual and legal issues de novo.  *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011).  Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.

We find the family court had jurisdiction under the UCCJEA to proceed with the termination of parental rights (TPR) action.[2]  Although South Carolina may not have been Child's home state when the removal action commenced,[3] the family

───────────

[1] S.C. Code Ann. §§ 63-15-300 to -394 (2010).

[2] This argument was not presented to the family court and is not preserved; however, we address it because it concerns subject matter jurisdiction.  *See Badeaux v. Davis*, 337 S.C. 195, 205, 522 S.E.2d 835, 840 (Ct. App. 1999) ("Lack of subject matter jurisdiction can be raised at any time, can be raised for the first time on appeal, and can be raised *sua sponte* by the court." (quoting *Lake v. Reeder Constr. Co.*, 330 S.C. 242, 248, 498 S.E.2d 650, 653 (Ct. App. 1998))); *id.* ("[I]t is the duty of this court to take notice and determine if the [f]amily [c]ourt had proper jurisdiction for its actions.").

[3] The parties acknowledged Mother moved from Alabama to South Carolina sometime before the removal action commenced in December 2014.  The only evidence we could find in the record of *when* Mother and Child moved to South

court had temporary emergency jurisdiction under section 63-15-336 of the South Carolina Code (2010) at that time. *See* S.C. Code Ann. § 63-15-330(A) (2010) ("Except as otherwise provided in Section 63-15-336, a court of this State has jurisdiction to make an initial child custody determination only if: (1) this State is the home state of the child on the date of the commencement of the proceeding . . . ."); S.C. Code Ann. § 63-15-302(7) (2010) ("'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned."); § 63-15-336(A) ("A court of this State has temporary emergency jurisdiction if the child is present in this State and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse."). Based on the plain language of section 63-15-336(B), we find the removal order became a final order for purposes of the UCCJEA. *See id.* ("If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under Sections 63-15-330 through 63-15-334, a child custody determination made under this section becomes a final determination, if it so provides and this State becomes the home state of the child."). Child remained in South Carolina following the removal action, and no evidence showed another state had issued orders concerning Child or an action concerning Child was commenced in another state. Thus, we find the removal order became a final order under the UCCJEA, and South Carolina had jurisdiction over Child when the Department of Social Services (DSS) filed the TPR action in November 2015.

Although Mother acknowledges she did not present evidence of any existing court order addressing Child's custody from another state, she asserts that under *South Carolina Department of Social Services v. Tran*, 418 S.C. 308, 792 S.E.2d 254 (Ct. App. 2016), the family court should have stopped the proceeding upon learning "there was an open case in the [s]tate of Alabama with the comparable DSS Agency" and "the proceeding should not have moved forward without [DSS] satisfying the family court that it had subject matter jurisdiction to proceed." However, we find *Tran* distinguishable. In *Tran*, this court found the removal order could not become a final order under section 16-15-336(B) because the mother "submitted evidence of an existing out-of-state order" and DSS did not meet its "burden of proving South Carolina ha[d] jurisdiction to proceed with [the]

---

Carolina was a guardian ad litem report indicating as of December 2014, Mother and Child had lived in South Carolina for four months.

action."  418 S.C. at 318, 792 S.E.2d at 259; *see also Anthony H. v. Matthew G.*, 397 S.C. 447, 452, 725 S.E.2d 132, 135 (Ct. App. 2012) ("[F]or South Carolina cases involving jurisdictional questions under the UCCJEA, *if the defendant provides evidence to the court of an existing out-of-state order*, the plaintiff assumes the burden of proving the new state has jurisdiction to issue the initial child custody order and the issuing state has lost or declined to exercise its jurisdiction." (emphasis added)).  Here, Mother did not submit *any* evidence during the hearing or on appeal that another state issued an order affecting Child.  In her brief, Mother does not allege another order existed—she merely states it *could* exist.  Mother has not submitted any evidence of an order or proceeding from another state affecting Child.  Thus, we find the removal order became a final order, and the South Carolina family court had jurisdiction under the UCCJEA to proceed with the TPR action.

Further, we find clear and convincing evidence showed Mother failed to remedy the conditions causing Child's removal.  *See* S.C. Code Ann. § 63-7-2570(2) (Supp. 2016) (providing a statutory ground for TPR is met when "[t]he child has been removed from the parent pursuant to . . . [s]ection 63-7-1660 and has been out of the home for a period of six months following the adoption of a placement plan by court order or by agreement between [DSS] and the parent[,] and the parent has not remedied the conditions which caused the removal").  Child was removed from the home in December 2014 after DSS received a report that Mother physically abused Child by "grabbing his leg and jerking him around while trying to change his diaper and punching him with her fist in the buttocks."  A doctor examined the Child's bruises and concluded they were consistent with child abuse.  Ashtyn Gardner, a DSS caseworker, testified DSS was concerned Mother may have a mental health issue because Mother stated she was bipolar, and Mother had threatened to harm her grandmother around the time Child was removed.  Mother testified she was admitted to the psychiatric ward around the time of removal, and they told her she was bipolar.  At the March 12, 2015 merits hearing, the family court determined Mother physically abused Child and ordered her to complete a placement plan that included attending parenting classes, completing a psychological evaluation and following recommendations, and attending individual counseling.  Based on the harm Child suffered and DSS's concerns about Mother's mental health, we find the foregoing services were reasonable and necessary components of the placement plan.  *See McCutcheon v. Charleston Cty. Dep't of Soc. Servs.*, 302 S.C. 338, 343, 396 S.E.2d 115, 118 (Ct. App. 1990) (providing DSS must "identify the condition that led to the removal" and "identify appropriate rehabilitative services"); *id.* at 342, 396 S.E.2d at 117 ("[I]t is imperative that the condition which led to [the child's] removal be thoroughly explored.").

Gardner testified DSS made the appropriate referrals, but at the time of the August 27, 2015 permanency planning hearing, Mother had not obtained a psychological evaluation, attended parenting classes, or completed individual counseling. Although Mother eventually attended parenting classes, the evidence showed she waited until 2016—more than a year after the removal—to begin them. Mother was discharged from mental health treatment in December 2015 due to "[n]on-compliance with treatment"; thus, we find the evidence shows that as of December 2015—a year after Child was removed and a month after DSS filed the TPR action—Mother had not completed individual counseling. Although it appears Mother sought counseling in 2016, we find Mother's delay in seeking counseling supports affirming this ground. Most concerning, however, was Mother's failure to obtain a psychological evaluation. Although Mother submitted a document that she averred was a psychological evaluation, Gardner testified the document did not "look like the typical psychological evaluation" DSS referred parents to, and DSS did not consider it a psychological evaluation. Additionally, the family court took judicial notice that the evaluation stated psychiatric was not assessed. Because the psychological evaluation was necessary to address the issues causing the removal, we find Mother's failure to submit to the evaluation supports affirming this ground.[4]

Viewed from Child's perspective, we find TPR is in his best interest.[5] *See* S.C. Code Ann. § 63-7-2570 (Supp. 2016) (providing the family court may order TPR upon a finding of one or more statutory ground and a finding that TPR is in the child's best interest); *S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000) (providing the best interest of the child is the paramount consideration in a TPR case); S.C. Code Ann. § 63-7-2620 (2010) ("The [interest] of the child shall prevail if the child's interest and the parental rights conflict."); *S.C. Dep't of Soc. Servs. v. Sarah W.*, 402 S.C. 324, 343, 741 S.E.2d 739, 749-50 (2013) ("Appellate courts must consider the child's perspective,

---

[4] We decline to address the remaining TPR grounds. *See S.C. Dep't of Soc. Servs. v. Headden*, 354 S.C. 602, 613-14, 582 S.E.2d 419, 425 (2003) (declining to address a statutory ground for TPR after finding other grounds were met).
[5] Mother did not raise this issue, but we address it because it concerns a minor child. *See S.C. Dep't of Soc. Servs. v. Roe*, 371 S.C. 450, 463, 639 S.E.2d 165, 172 (Ct. App. 2006) ("The duty to protect the rights of minors and incompetents has precedence over procedural rules otherwise limiting the scope of review and matters affecting the rights of minors can be considered by this court *ex mero motu*.").

and not the parent's, as the primary concern when determining whether TPR is appropriate."). Although Mother made late efforts at addressing her mental health issues, her failure to obtain a psychological evaluation makes reunification unlikely. Child has been in foster care for twenty-nine months and is currently three years old; he needs stability and permanency. Gardner testified Child appeared distant from Mother during visits. Likewise, Child's guardian ad litem stated Child appeared unhappy during visits. Child is bonded with his foster parents, who wish to adopt him. Thus, we find TPR is in his best interest.

Finally, we find the issue of Child's permanent plan is not properly before this court. The permanent plan of TPR and adoption was set forth in the September 28, 2015 permanency planning order, which was a final order. *See Hooper v. Rockwell*, 334 S.C. 281, 291, 513 S.E.2d 358, 364 (1999) ("[A]ny order issued as a result of a merit hearing, as well as any later order issued with regard to a treatment, placement, or permanent plan, is a final order that a party must timely appeal."). Mother did not serve a notice of appeal from that order within thirty days; thus, this court lacks jurisdiction to consider this issue. *See* Rule 203(b)(1), (3), SCACR (providing a notice of appeal from a family court order "shall be served on all respondents within thirty (30) days after receipt of written notice of entry of the order or judgment"); *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 14-15, 602 S.E.2d 772, 775 (2004) ("The requirement of service of the notice of appeal is jurisdictional, *i.e.,* if a party misses the deadline, the appellate court lacks jurisdiction to consider the appeal and has no authority or discretion to 'rescue' the delinquent party by extending or ignoring the deadline for service of the notice.").

**AFFIRMED.**[6]

**LOCKEMY, C.J., and HUFF and THOMAS, JJ., concur.**

---

[6] We decide this case without oral argument pursuant to Rule 215, SCACR.