**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Karen A. Anise, Appellant.

Appellate Case No. 2023-000118

———————

Appeal From York County
David G. Guyton, Family Court Judge

———————

Unpublished Opinion No. 2025-UP-005
Submitted December 2, 2024 – Filed January 8, 2025

———————

**AFFIRMED**

———————

Robin M. Lalley, of Sodoma Law, P.C., of Rock Hill, for Appellant.

Barbara Sullivan Cooper, of Columbia, for Respondent.

———————

**PER CURIAM:** Karen A. Anise appeals the family court's denial of her motion to vacate a child support order entered against her. In 2018, Anise's former husband (Father) requested assistance from the South Carolina Department of Social Services (DSS) in receiving support from Anise for their two children. Anise argues that Father made fraudulent misrepresentations to the South Carolina family court about

prior orders issued in the state of Florida and that the South Carolina court lacked jurisdiction to enter a support order against her.  We respectfully disagree with these arguments.  Therefore, we affirm.

**The Uniform Interstate Family Support Act**

The Uniform Interstate Family Support Act was enacted to ensure one order, from one place, will control a particular child support matter.  *Badeaux v. Davis*, 337 S.C. 195, 206, 522 S.E.2d 835, 840–41 (Ct. App. 1999).  All states receiving federal assistance for child support services are required to follow this act.  *Id.* at 205, 522 S.E.2d at 840.  The act became effective in South Carolina in 1994.  *Id.* at 207, 522 S.E.2d at 841.

Section 63-17-3070(A) provides: "If a proceeding is brought under this article and only one tribunal has issued a child-support order, the order of that tribunal controls and must be recognized."  S.C. Code Ann. § 63-17-3070(A) (Supp. 2024).  Section 63-17-3070(B) gives guidelines for determining a controlling support order when there are two or more support orders from different states and "with regard to the same obligor and same child."  S.C. Code Ann. § 63-17-3070(B) (Supp. 2024).  We find the South Carolina family court's order controlling for two reasons.

First, the 2013 Florida order did not provide for any support.  Instead, it terminated all of Father's support obligations and awarded Father full custody of the children. It is true the order stated that any provisions of the 2010 Florida divorce decree that were not inconsistent with the new terms would remain in full effect.  Anise argues this inclusion of the divorce decree makes the 2013 order a support order because the divorce decree instructed Father to maintain healthcare for the children and the subsequent order did not address healthcare.  We respectfully reject this argument.

The 2013 order stated that it terminated Father's "child support obligation[s]," not solely his monetary obligations.  By definition under section 63-17-2910(28), healthcare falls within "support."  S.C. Code Ann. § 63-17-2910(28) (Supp. 2024). We assume Father continued to maintain healthcare for the children, but that healthcare "obligation" would have stemmed from Father's duties as the custodial parent with sole parental responsibility, not any order from the Florida court. Father's provision of healthcare in the time between the 2013 Florida order and the South Carolina family court order surely would not estop his request that Anise aid him in supporting the children.  Anise is bound by law to assist Father with child support. *See SCDSS/Child Support Enf't v. Carswell*, 359 S.C. 424, 431, 597 S.E.2d

859, 862 (Ct. App. 2004) ("[A] parent's support obligation arises at the birth of a child.").

Second, even if the 2013 order was a support order, it dealt with a different obligor. Section 63-17-3070(B) provides steps for determining a controlling support order when there are two or more support orders from different states, but specifically when the orders are regarding "*the same obligor* and same child." § 63-17-3070(B) (emphasis added); *see also* Fla. Stat. Ann. § 88.6111(3) (West) ("If two or more tribunals have issued child support orders *for the same obligor* and same child, the order that controls and must be so recognized . . . establishes the aspects of the support order which are nonmodifiable."). When the Florida court reviewed and terminated support, it terminated *Father's* support obligations to Anise and the children. When Father petitioned for support from Anise, Anise became the *new* obligor. We do not see how an order terminating Father's support obligations and addressing no support obligations whatsoever of Anise could control this case.

Anise tries to frame Father's petition for support as a modification of the Florida order. As explained above, the Florida order did not constitute a support order. Further, even if it was a support order, the South Carolina family court was not acting in a "modification" capacity. Again, we view the support matter before us as separate and distinct from the Florida court's termination of Father's support obligations.

Further, section 63-17-3050(A) provides requirements for a South Carolina court to maintain continuing, exclusive jurisdiction over a child support order that it issued. S.C. Code Ann. § 63-17-3050(A) (Supp. 2024). This case satisfies all of the requirements. As explained above, the South Carolina family court addressed an entirely new support matter and thus its order is valid and controlling. *See* § 63-17-3070(A). Additionally, South Carolina was the state of Father's residence and the residence of both benefitting children at the time this action was commenced. *See* § 63-17-3050(A)(1). Anise also appeared in open court in York County for the family court's initial hearing and signed the court's order consenting to its continued jurisdiction. *See* § 63-17-3050(A)(2).

Based on the foregoing, the South Carolina family court appropriately ordered Anise to pay child support.

**The Full Faith and Credit for Child Support Orders Act**

Our analysis under the Full Faith and Credit for Child Support Orders Act is similar. Here, as in the Uniform Interstate Family Support Act, this regime "settles the interrelationship between various support orders by creating a system where there is one court with continuing, exclusive jurisdiction." *Carswell*, 359 S.C. at 432, 597 S.E.2d at 862.

The act provides: "If only [one] court has issued a child support order, the order of that court must be recognized." 28 U.S.C. § 1738B(f)(1). The act also provides guidelines for determining a controlling order between two orders from different states regarding *the same obligor* and child. § 1738B(f); § 1738B(f)(2)–(4). It further provides a state court that has issued a support order in compliance with the act will maintain jurisdiction over the order "if the [s]tate is the child's [s]tate or the residence of any individual contestant or the parties have consented in a record or open court that the [state court] may continue to exercise jurisdiction to modify its order." 28 U.S.C. § 1738B(d).

For the same reasons explained in the previous section, the South Carolina family court properly exercised jurisdiction pursuant to the Full Faith and Credit for Child Support Orders Act.

**Fraud Allegations**

Anise argues the South Carolina family court should have vacated its support order because Father failed to register the Florida order in South Carolina; failed to inform DSS and the South Carolina family court of the "actual language" in the Florida order; and violated the Florida order's terms "by seeking to modify and litigate the action outside of Florida."

To accept these arguments, we would first need to agree that the South Carolina family court was "modifying" the Florida order. As explained above, the South Carolina order was a separate and controlling order. In that same vein, we disagree that Father's failure to register the Florida order amounts to "fraud" warranting the South Carolina court vacate its support order. Again, the Florida order did not constitute a support order, and certainly not one against Anise. It seems illogical to require Father to register an order that terminated his support obligation and lacked any mandate requiring someone else to assist in supporting the children. *See* S.C. Code Ann. § 63-17-3610 (Supp. 2024) ("A support order . . . issued in a tribunal of another state . . . *may* be registered in this State *for enforcement*." (emphases added)); S.C. Code Ann. § 63-17-3810 (2010 & Supp. 2024) ("A party or support

enforcement agency *seeking to modify, or to modify and enforce*, a child-support order issued in another state shall register that order in this State." (emphasis added)).

Additionally, Anise had every opportunity to present arguments regarding the Florida order to the South Carolina family court prior to her motion to vacate. Instead, Anise voluntarily appeared before the South Carolina court and consented to that court's continuing jurisdiction. Accordingly, the family court did not err in declining to vacate its support order based on the alleged fraud. *See Ware v. Ware*, 404 S.C. 1, 10, 743 S.E.2d 817, 822 (2013) ("The decision to deny or grant a motion made pursuant to Rule 60(b), SCRCP[,] is within the sound discretion of the trial judge."); *id.* ("An abuse of discretion occurs when the order of the court is controlled by an error of law or where the order is based on factual findings that are without evidentiary support.").

## Conclusion

The South Carolina family court's support order is **AFFIRMED**.[1]  We decline to address any remaining issues. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling it unnecessary for an appellate court to address remaining issues when its resolution of a prior issue is dispositive).

**THOMAS, HEWITT, and VINSON, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.